PUETZ ET AL. *v.* COZMAS ET AL.

[No. 29,628. Filed January 22, 1958.]

*Hogg and Peters* and *Richard I. Snouffer,* both of Fort Wayne, for appellants.

*Joseph Christoff* and *O. E. Fuelber,* both of Fort Wayne, for appellees.

ACHOR, J.—This case comes to us on petition to transfer from the Appellate Court under Rule 2-23 of this court. See: *Square D Company* v. *O'Neal* (1947), 225 Ind. 49, 52, 72 N. E. 2d 654.

The facts and the issues presented in this case are substantially as follows:

Appellees brought this action against appellants to recover the possession of certain real estate in the City of Fort Wayne, and for damages for wrongful detention thereof. Trial to the court resulted in judgment

in favor of appellees for possession and $500 damages. The error assigned here is the overruling of appellants' motion for a new trial. The specifications of that motion are that the decision is not sustained by sufficient evidence and is contrary to law.

The material facts were stipulated and may be summarized as follows:

On the 23rd day of January, 1951, one Fred Fell leased to appellees certain real estate in the City of Fort Wayne (a part of which is involved in this action) for a period of five years from March 1, 1951. Among the provisions of said lease were the following:

. . .

"(d) The second parties shall have the first privilege of negotiating a lease of the demised premises at the expiration of the demised term, and if the parties cannot agree upon the terms and conditions of a new lease, the first party shall have the right and privilege of otherwise letting or disposing of the property. It is also agreed that in the event first party elects to sell the demised premises during the term of the within lease that he shall extend to the second parties the privilege of bidding therefor."

On the 26th day of December, 1952, appellees subleased to appellants a portion of the real estate for 33 months from the 1st day of January, 1953, to the 30th day of September, 1955, at a monthly rental of $95.00. The provision of this sub-lease which has caused this litigation is as follows:

"(33) As a part of the consideration of this lease, Lessors hereby grant and give to Lessee an option of an additional term of five (5) years from the expiration of the lease herein; provided, however, that Lessors exercise their option with the owners of the real estate herein described. It is understood, however, that lessors cannot make any representations as to the rental rate in the event

such option is exercised by themselves and the lessee herein. Lessors represent and warrant that they will only charge such increased rental as is charged to them in the further event that lessee herein exercises his option with lessors herein. In the event that lessee herein desires to exercise the option herein provided for, lessee shall notify lessor in writing by directing a communication on or before March 1, 1955 in the United States Mail to Schaaf & Auer, Inc. . . ."

This sub-lease was prepared by appellees' rental agent and approved by appellants' attorneys. In 1955 appellants notified appellees of their intention to renew their lease and appellees made demand for possession.

First, it is contended by appellants that although appellees bought the property instead of "negotiating a (new) lease" with the owner Fell, this fact did not vitiate appellants' right to renew their lease with appellees even though their lease made no specific provision regarding the amount of rent to be paid by appellants in event of the purchase of the property by appellees. Appellants contend that because appellees, as sub-lessors, agreed to "give to Lessee an option of an additional term of five years," and agreed to "only charge such increased rental as is charged to them," that appellees thereby obligated themselves to renew the lease with appellants and accept a fair and reasonable rental for the property, even though appellees purchased the property and thereby continued to be in a position to renew such lease for the additional term.

Second, appellants contend that if, under the circumstances here presented, the parties fail to agree as to what constitutes a fair rental the courts can and should determine that value.

A decision regarding appellants' *first* contention must

rest solely upon the construction of the written lease executed between the owner Fell and appellees and the sub-lease executed by appellees and appellants. There is no evidence in the record, extrinsic of said leases, to assist us in determining the fact as to the "meeting of the minds" between the parties in the controverted area.

In construing these leases, we are at the outset confronted by the fact that the renewal provision of the sub-lease between the parties is expressly made dependent and contingent upon appellees' exercise of their *option* with the owners of the real estate as authorized in section "(d)" of the primary lease between appellees and Fell. Clearly this provision did not constitute an *option* in any legal sense for the reason that nothing therein imposed any obligation upon Fell with respect to the property pursuant to an election on the part of the lessees.[1] At most the provision merely gave appellees a "first privilege of negotiating a (new) lease," or of "bidding" for the purchase of the property, with no subsequent right in appellees to impose an obligation upon Fell at their election. Obviously such a provision contained no basis upon which appellees could ascertain and contract regarding the amount of rental which they would be required to charge for the property in the future, in event they either released the property or bought it from Fell. In event appellees should successfully "negotiate a (new) lease" for the property they could and did agree as to a criterion by which they would fix the amount of rental on renewal of their lease with appellants. In such eventuality they agreed that they would "only charge the increased rental as charged to them." However, in event the owner should "elect to sell the demised

---

1. See: 67 C. J. S., *Option*, p. 511.

premises" and appellees should exercise their privilege of "bidding" therefor, as are the facts in the case, appellees could not know the price they would be required to pay for the property nor the costs incidental to such ownership, consequently they could not know or state the amount of rental they would be required to demand on renewal of the sub-lease with appellants. Consistent with this state of facts the sub-lease between the parties expressly provided: *"lessors* (appellees) *cannot make any representations as to the rental rate in event such option is exercised by themselves and the lessee* (appellants) *herein."* True, appellees further agreed that they would "only charge such increased rental as charged to them," but as heretofore stated this provision could apply only in event appellees negotiated a new lease with Fell.

We conclude therefore that standing unaided by any extrinsic evidence on the subject, the lease between the parties must be construed as expressly containing no representation as to the rental rate on renewal in event of the purchase of the property by appellees.

Next we consider the question presented by appellants' second contention that where a lessor agrees to renew a lease for a stated period, but states that he "cannot make any representation as to the rental rate" on renewal because of certain contingencies, which contingencies have occurred, the court may construe the agreement to mean that the lessor will renew the lease at such rental as is fair and reasonable and further that where the parties fail or refuse to agree as to what constitutes a fair rental the courts can and should determine that value. In support of this contention appellants cite the case of *Edwards* v. *Tobin et al.* (1930), 132 Ore. 38, 284 Pac. 562, 563, 68 A. L. R. 152.

However, that case is distinguishable from the case at bar on the basis of the facts involved. In that case the parties expressly agreed in the renewal clause that the rent for the additional five-year term should be determined by the parties "on a fair, equitable and reasonable basis." This is in direct contrast with the stipulation in the lease before us. In the case at bar the lease between the parties expressly stated that "lessors cannot make any representation as to rental rate" on renewal. Therefore, neither the reasoning nor the precedent of the Oregon case, *supra,* is controlling of the case before us.

Furthermore, appellants' contention that in the absence of an agreement by the parties as to the amount of rental on renewal, the court may determine the fair and reasonable rate, is in direct conflict with the precedent of this court, as announced in the case of *Habich* v. *University Park Bldg.* (1912), 177 Ind. 193, 197, 97 N. E. 539. In that case the lease in controversy granted the lessee the privilege of five additional years at a rental to be "agreed upon between the parties." This court decided that the provision made the lease unenforceable. Specifically the court stated:

> "There is nothing in these answers of the jury showing that said first lease was renewed for another term of 5 years under the terms of said lease. *Its renewal depended on the agreement of appellant and appellee as to the rent to be paid therefor. If no agreement was made between them as to rent, it was not renewed. . . ."* (Our italics.)

In the case at bar the parties clearly agreed upon a criterion by which they could ascertain the amount of rental in event appellees should themselves renew their lease with Fell. However, there is nothing in the lease which can, with any reasonable degree of certainty, be

construed to mean that any particular amount of rent would be charged in event appellees purchased the property. Clearly there is no evidence that there existed a "meeting of the minds" between the parties on the subject of rent under the circumstances here presented.

The consideration is an essential element to every contract. In event the amount of consideration to be paid as rent on renewal of a lease is not agreed upon, but is left to further agreement, the lease is unenforceable unless it provides some criterion by which such rent shall be determined,[2] or the lease must clearly provide that other persons should determine the amount of such rental in event the parties failed to agree on the amount.[3]

We recognize that many times inequities result in the business dealings between parties because they fail to protect themselves by contract regarding future contingencies which they may or may not contemplate. Where this failure occurs as a result of omissions or ambiguities in their contract, it can ordinarily be clarified by evidence regarding the true context of their agreement. However, where, as here, their agreement is so indefinite upon an essential element that it cannot be construed with reasonable certainty, and where, as here, it stands alone not clarified by extrinsic evidence which could give it meaning, there is nothing for the court to construe. The court cannot rewrite and then enforce contracts which, to the knowledge of the court, the parties themselves did not enter into.[4]

Judgment is therefore affirmed.

2. *Levin* v. *Munk* (1933), 97 Ind. App. 118, 169 N. E. 82.
3. *Parsons* v. *Ball* (1924), 205 Ky. 793, 266 S. W. 649.
4. *Wallace* v. *Mertz* (1926), 86 Ind. App. 185, 156 N. E. 562.

Emmert, C. J., Arterburn, Bobbitt & Landis, JJ., concur.

NOTE.—Reported in 147 N. E. 2d 227.