Samuel J. LICOCCI, Appellant,

v.

CARDINAL ASSOCIATES,
INC., Appellee.

Gil PAPP, Appellant,

·v.

CARDINAL ASSOCIATES,
INC., Appellee.

No. 283S67.

Supreme Court of Indiana.

Feb. 22, 1983.

Rehearing Denied May 10, 1983.

R. Eugene Johnson, Thomas J. Kimpel and Donald J. Fuchs, Merrill, Schroeder & Johnson, Evansville, for appellant.

Charles L. Martin, Boonville, for appellee.

ON PETITION TO TRANSFER

PIVARNIK, Justice.

This cause comes to us by way of a Petition to Transfer from the Fourth District Court of Appeals. Respondents-Appellants-Plaintiffs Licocci and Papp originally appealed from the Gibson Circuit Court's refusal to dissolve a preliminary injunction enforcing two of three restrictive covenants in their respective employment contracts with Petitioner-Appellee-Defendant Cardinal Associates, Inc. The contested contracts restricted Licocci and Papp from competition in the following ways:

1) they were prohibited from soliciting sales from anyone in their former assigned sales territories during the sixty (60) day period following the respective dates on which they individually terminated their employment with Cardinal Associates;

2) they were prohibited during said sixty (60) day period from calling upon, talking to or soliciting any business from any customer of Cardinal Associates within or outside their former territories; and

3) they were prohibited from selling the same products to any of their former Cardinal customers for one year following termination with Cardinal.

The trial court enforced two of the restrictions by ordering compliance with the first and third, but not the second.

Licocci and Papp contended before the Court of Appeals that the trial court abused its discretion in granting the injunction because the non-competition restrictions were invalid and relief in equity was unjustified. They specifically argued that both the second and third restrictions were unreasonable because the limitations therein pertained to areas outside the geographic limits of their assigned sales territories at the time of their respective terminations. Licocci and Papp did not dispute the reasonableness of the first restriction. The Court of Appeals affirmed the trial court in its enforcement of restriction number one but reversed the judgment of the trial court in its enforcement of restriction number three. Transfer is now sought to challenge the Court of Appeal's reversal regarding restriction number three.

 The Court of Appeals refused to enforce restriction number three for two reasons. The Court held that the one year non-competition clause was invalid because it did not contain an adequate spatial limitation. The Court also held that the possibility of repeat business in certain products was not a protected interest of sufficient character to justify the covenant's restraint of trade. We find the Court of Appeals wrong in its judgment on restriction number three and accordingly vacate its opinion and hereby grant transfer. Since we do agree with the Court of Appeals in its disposition of certain collateral issues, however, we adopt that Court's language on those specific issues and incorporate it into our opinion as follows:

## "SUMMARY OF THE FACTS

Cardinal Associates sold products to educational, civic, business, recreational and religious organizations for resale as fundraising projects. The corporation hired Licocci and Papp as commissioned salesmen to promote those products and to solicit orders.

On May 9, 1978, Licocci signed an employment contract for a one-year term beginning August 1, 1978. Among other things the contract provided that for 60 days after termination of employment, Licocci would neither compete with Cardinal within his assigned territory nor contact any of Cardinal's customers anywhere. Upon expiration of that contract, Licocci signed a new contract on July 31, 1979, which, in addition to the above two restrictions, contained a third: That for one year he would not sell or help anyone else sell the same products to the same customers he dealt with while working for Cardinal Associates.

On May 2, 1979, Papp signed an employment contract for a one-year term beginning August 1, 1979. The substance of the agreement was similar to Cardinal Associates' 1978 contract with Licocci. On July 31, 1979, Papp agreed to a substitute contract which added the one-year restriction on sales of the same product to former customers.

On January 17, 1980, the contracts of both salesmen were amended to create escrow accounts from which they could withdraw funds against their commissions, earned or to be earned, on a weekly basis. Twenty percent of the accumulated commissions, if any, could be drawn twice a year, and the balance, less $1,000, was to be paid each September 15, after the close of Cardinal Associates' fiscal year.

This procedure of drawing against commissions was to be in effect only so long as Licocci and Papp worked fulltime for Cardinal Associates. The contract did not provide a procedure for settling the account if the employees left or were fired.

Licocci and Papp worked for Cardinal Associates until the Spring of 1981. Papp sent the company a 30-day notice of termination on March 2. At that time he was drawing $1,200 a week from his account. On March 6, Licocci sent the company a 30-day notice of termination. His weekly draw was $800. Licocci asked for a 20 percent draw from the accumulated earnings, but Cardinal refused.

The company's position was essentially that when Licocci and Papp resigned, they were no longer entitled to any weekly or special draws and payment of any commissions were not due until the regular settlement date of September 15. Moreover, Cardinal Associates believed its two former employees were violating the non-competition agreement. Licocci and Papp responded by suing for immediate payment of the commissions owed, and Cardinal Associates counterclaimed for an injunction to prevent competition. The cases were consolidated and the trial court granted a preliminary injunction enforcing the 60-day ban on competition within the assigned territory and the one-year ban on selling identical products to old customers. Licocci and Papp appealed the court's refusal to dissolve that preliminary injunction.

## I. VALIDITY OF THE CONTRACTS

Licocci and Papp first argue the injunction was improper because it enforced invalid contracts. They contend the contracts lacked "mutuality of obligation" because Cardinal was not required to accept any of the orders solicited by its salesmen. Item 3 provided:

"No orders solicited by or on behalf of the Representative shall be binding upon the Corporation unless and until acceptance thereof by the Corporation. The Corporation may reject any orders obtained or reported by the Representative, at its sole discretion."

While it is fundamental that a contract is unenforceable if it fails to obligate the parties to do anything, *Davis v. Davis,* (1926) 197 Ind. 386, 151 N.E. 134; *Seco Chemicals Inc. v. Stewart,* (1976) 169 Ind.App. 624, 349 N.E.2d 733; *International Shoe Co. v. Lacy,* (1944) 114 Ind.App. 641, 53 N.E.2d 636; *Grimm v. Baumgart,* (1951) 121 Ind.App. 626, 96 N.E.2d 915, the court necessarily will consider the entire contract and the presence of an acceptance clause alone will not invalidate it. *Imel v. Travelers Indemnity Co.,* (1972) 152 Ind.App. 75, 281 N.E.2d 919.

Licocci and Papp rely on *Zeyher v. S.S. & S. Manufacturing Co.* (7th Cir.1963) 319 F.2d 606. That opinion affirmed the trial court's decision that an employment contract with a provision similar to Cardinal's Item 3 was unenforceable for want of certainty and mutuality in that it created "no obligation which either party can legally enforce against the other." 319 F.2d 607. That conclusion rested on its finding

"the contract did not bind plaintiff to secure any orders, nor to sell a minimum or maximum, of S.S. & S. products; did not provide for a reasonably certain way of determining the sales price or prices of S.S. & S. products; did not bind S.S. & S. to accept any orders submitted by plaintiff and did not provide a formula for determining when, if any, an obligation to accept an order would arise."

Unlike the parties in Zeyher, Licocci and Papp obtained the exclusive right of representation in designated areas. Moreover, Cardinal Associates agreed to provide equipment, samples, literature, sales material, price lists, consumer lists and specialized training. In turn, Licocci and Papp agreed to solicit orders on a commission basis exclusively for Cardinal and to endeavor to sell a minimum of 80,000 units per year.

The exclusivity agreements alone remove this case from the rationale of the *Zeyher* decision, which noted at 319 F.2d 608:

"In *Wood v. Lucy, Lady Duff-Gordon,* 222 N.Y. 88, 118 N.E. 214 (1917), the court implied consideration where defendant gave an exclusive agency, and unless the agent 'gave his efforts, she could never get anything.' That is not true of S.S. & S. because plaintiff did not have an exclusive agency. We do not find in the case at bar the facts which in *Lady Duff-Gordon* impelled the court to conclude that the transaction there 'was instinct with obligation.' "

Despite the employer's escape clause on accepting orders, we find Licocci's and Papp's contracts as a whole were instinct with obligation. In exchange for their promises to solicit orders, Licocci and Papp obtained exclusive territorial rights in handling Car-

dinal Associates' products and Cardinal Associates gave up the right to send any additional salesmen into their territories. *See Seco Chemicals, supra.*

The contracts did not fail because of the mere presence of a reservation nor was a preliminary injunction improper for that reason.

## II. BREACH OF CONTRACT

Licocci and Papp next contend it was an abuse of the trial court's discretion to grant an injunction to a party which had breached the contracts it sought to enforce and had illegally withheld compensation from those it sought to enjoin from competition. Specifically, Licocci and Papp say Cardinal Associates breached the employment contracts by: 1) reducing and eventually eliminating the amount permitted to be withdrawn from the escrow account; 2) failing to disburse at the next date for withdrawal from the escrow account the balance of the commissions due, thus violating Ind.Code 22–2–5–1; and 3) refusing to comply with Licocci's request for a 20 percent withdrawal from the escrow account.

All of these issues form the substance of Licocci's and Papp's complaints for money owed, which are questions pending before the trial court. Nevertheless, where it appears *beyond controversy* the appellee violated the contract, an injunction is improper. *Bowerman v. First Merchants National Bank,* (1937) 211 Ind. 344, 7 N.E.2d 198; *Wischmeyer v. Finch,* (1952) 231 Ind. 282, 107 N.E.2d 661.

In the case before us, contract violations by the appellee are disputed questions of fact and not at all beyond controversy. The Licocci and Papp contracts only provided for a draw as long as the salesmen remained fulltime employees, and provided no specific method for disbursement of accumulated earnings upon termination of employment. Accordingly Cardinal Associates' discontinuance of the draw pending the September 15 settlement was not beyond controversy a breach of contract.

Licocci and Papp further contend Cardinal Associates failed to comply with Ind. Code 22–2–5–1, [Footnote omitted] which requires the amount due an employee be paid on the next regular payday after voluntary termination. Even if IC 22–2–5–1 applies to sales commissions, a question not before decided, the evidence is not at all clear that a weekly draw against commissions "earned or to be earned" is "an amount due" or that a day designated for withdrawals from an escrow account is a "regular payday." These questions form the subject of the pending principal litigation in this cause and should be finally decided in that context.

A preliminary conclusion by the trial court that Cardinal Associates had not breached the contract or violated the statute was not clearly erroneous, and equitable relief was not improper on those grounds.

## III. REASONABLE RESTRICTIONS

Licocci and Papp next contend the restrictions on competition were unreasonable and unenforceable under Indiana law. The covenant reads as follows:

"In the event this Contract is terminated by either party hereto in the manner hereinafter setforth [sic] the Representative hereby agrees that in as much as the customers to whom products and/or programs are sold by virtue of this agreement or by virtue of any other agreements between the Corporation herein and any of the Representatives are the customers of the Corporation and that in as much as the Representative herin (sic) shall during the term of this Contract and any extensions thereof acquire and attain certain knowledge, expertise, confidential information and sales techniques by virtue of said Representatives having entered into and worked pursuant to this Contract; the Representative does agree that for a period of sixty (60) days from and after the termination of this Contract the said Representative shall not engage in any business or activities, which directly or indirectly compete in anyway (sic) with the business and activities of the Corporation within the territory assigned to the Representative under

this Contract; that the Representative will not for a period of Sixty (60) days from and after the termination of this Contract by either party as hereinafter setforth [sic] call upon, talk with or solicit any business from any customers of the Corporation within or outside the territory of the Representative as hereinafter setforth [sic]; and further that the Representative will not for a period of one year from and after the term of this contract by either party as herinafter (sic) set forth engage in, participate in, or in any way assist anyone else, directly or indirectly, selling to cusotmers (sic) to whom said representative sold products during the time he was engaged as a Representative of Cardinal Associates Midwest, Inc. any product which is either identical to or essentially the same product as those products said Representative sold to that particular customer while he was representing Cardinal Associates Midwest, Inc." [Footnote: Cardinal Associates Midwest, Inc. changed its name to Cardinal Associates, Inc. in May 1980.]

All such covenants as this are in restraint of trade and are not favored by the law. They will be enforced only if they are reasonable with respect to the covenantee, the covenantor and the public interest. We make this determination upon the basis of the facts and circumstances surrounding each case. It depends upon a consideration of the legitimate interests of the covenantee which might be protected, and the protection granted by the covenant, in terms of time, space, and the types of conduct or activity prohibited. *Donahue v. Permacel Tape Corp.,* (1955) 234 Ind. 398, 127 N.E.2d 235.

While the burden of proving the facts and circumstances that may justify relief rests with the party seeking to enforce the covenant, the ultimate determination of whether the covenant is reasonable is a question of law for the court. *Donahue, supra; Wiley v. Baumgardner,* (1884) 97 Ind. 66; *Frederick v. Professional Building Maintenance Industries, Inc.,* (1976) 168 Ind. App. 647, 344 N.E.2d 299; *Struever v. Monitor Coach Co., Inc.,* (1973) 156 Ind.App. 6, 294 N.E.2d 654.

In addition, if the covenant as written is not reasonable, the courts may not create a reasonable restriction under the guise of interpretation, since this would subject the parties to an agreement they had not made. *Donahue, supra; Wiley, supra.* However, if the covenant is clearly separated into parts and some parts are reasonable and others are not, the contract may be held divisible. The reasonable restrictions may then be enforced. *Welcome Wagon, Inc. v. Haschert* (1955) 125 Ind.App. 503, 127 N.E.2d 103.

In the case before us, the evidence disclosed Licocci and Papp were employed by Cardinal Associates as outside salesmen. The company assigned only one salesman to each territory. Through this employment, the salesman acquired skills and knowledge about company operations and distribution techniques, including lists of past customers, current prices and available products. However, as noted in *Donahue,* the potential use by a former employee of acquired knowledge, skill and information (except trade secrets and confidential information) will not justify a restraint. Although Cardinal Associates may have considered its customer lists confidential, no evidence indicated these lists could have been used to undercut competition or could not easily have been duplicated by alternate means, such as a telephone canvass of the market area. Neither was there evidence the information given salesmen was novel or unique to Cardinal Associates so as to constitute a protectible trade secret.

Licocci and Papp also acquired through their employment the advantage of personal acquaintance with Cardinal Associates' customers in the areas where they worked. The Indiana courts have held the advantageous familiarity and personal contact which employees derive from dealing with an employer's customers are elements of an employer's "good will" and a protectible interest which may justify a restraint, if limited to a reasonable period and to the geographical area of the employee's prior

operations. *Donahue, supra; 4408 Inc. v. Losure,* (1978) [175] Ind.App. [658], 373 N.E.2d 899; *Frederick, supra; Miller v. Frankfort Bottled Gas Inc.,* (1964) 136 Ind. App. 456, 202 N.E.2d 395.

In the case before us, the contract restricts competition in three ways. 1) Licocci and Papp were prohibited from soliciting sales from anyone in their former territories for 60 days; 2) they were prohibited for 60 days from calling upon, talking to or soliciting any business from any customer of Cardinal Associates within or outside their former territories; and 3) they were prohibited from selling the same products to any of their former customers for one year.

Before considering the reasonableness of these restrictions, we must first deal with the appellants' argument that if any of the restrictions fail they all fail.

The trial court selectively enforced the covenant's restrictions on competition by ordering compliance with the first and third limitations but not the second. Licocci and Papp argue the covenant was not divisible, citing *Frederick, supra,* and conclude it was error to enforce any of the restrictions if some of them were unreasonable. We do not agree.

The manner in which the covenant in *Frederick* was constructed indicated the intention of the parties was not to limit competition to areas where Frederick worked but to include the entire area where the company operated. It provided:

"James Frederick ... hereby covenants ... that he will not engage in contract building maintenance business, including, but not limited to, janitorial services, window cleaning, floor cleaning, commercial or residential cleaning, either as a sole proprietor, partner, or agent or employee of a corporation or other business organization in the following localities:

The counties of Lake, Porter, LaPorte and St. Joseph in Indiana; the counties of Will and Cook, in Illinois, except Chicago; and the counties of Berrien and Van Buren in Michigan.

The covenant shall extend for a period of ten years from the date of termination of the undersigned's employment...."

The company did business in all the counties listed, but there was no evidence Frederick had worked in more than two or three of them. The Court of Appeals refused to save the covenant by limiting its effect only to the counties of Frederick's employment since that would have amounted to the court subjecting the parties to an agreement they had not made.

While Frederick's contract required a rewriting if it were to be saved, the Licocci and Papp contracts did not. They stated three severable and independent restrictions on competition. Elimination of one or more of those restrictions had no effect on the intent of the parties concerning the scope of the remaining restrictions. The courts have found similar covenants divisible. *Wiley, supra; Beard v. Dennis,* (1855) 6 Ind. 200; *Waterfield Mortgage Co., Inc. v. O'Connor,* (1977) 172 Ind.App. 673, 361 N.E.2d 924; *Bennett v. Carmichael Produce Co.,* (1917) 64 Ind.App. 341, 115 N.E. 793.

We hold, therefore, it was not error for the trial court to enforce some but not all of the restrictions, and the failure of any one of the restrictions did not necessitate the destruction of the entire covenant."

We do not agree with the Court of Appeals' conclusion that restriction number three failed to impose adequate spatial limitations. The undisputed evidence clearly shows that Licocci and Papp were assigned separate and distinct sales areas and that each was the only Cardinal representative in his respective area. All of the customers with whom Licocci and Papp dealt with were, therefore, Cardinal customers located in these respective sales areas. This is especially true considering the fact that the customers were school groups or groups otherwise tied to particular communities. We do not remake these employment contracts by holding that restriction number three reasonably forbids the solicitation of or sale to any former Cardinal customer for one year following termination. We would

have to strain the contractual language and pervert the parties' obvious intent to infer that a large and indefinite area was actually contemplated due to the possibility that one or more of the former Cardinal customers may relocate outside of the former assigned sales territories. Appellee Cardinal Associates correctly points out that when the clear intent of the parties can be determined from their written contract, the court should construe their contract according to that intent. Accordingly, we find that the parties to these instant contracts intended a reasonable spatial limitation to restriction number three, to-wit: the former assigned sales territories. Furthermore, since Licocci and Papp were Cardinal's exclusive representation in these areas and to these customers, we find that Cardinal was not unreasonable to provide that its former representatives were not to undermine Cardinal's business by pursuing former Cardinal customers without first giving Cardinal an opportunity to obtain new representation in said areas. Restriction number three does not represent the broad spatial limitation found oppressive in *Frederick, supra.* Restriction number three also is consistent with the spatial limitations approved by this Court in *Grand Union Tea Co. v. Walker,* (1935) 208 Ind. 245, 195 N.E. 277, and by the Court of Appeals in *Welcome Wagon, Inc., supra.*

This Court and the Court of Appeals have held that the validity of a non-competition clause is dependent not merely upon the covenant itself but upon the entire contract and the situation to which it is related. *Woodward Insurance, Inc. v. White,* (1982) Ind., 437 N.E.2d 59, *reh. denied; Donahue, supra; Struever, supra.* No one disputes that Licocci's sales territory was never changed during his employment with Cardinal. Moreover, no one disputes that Papp's sales territory always consisted of approximately twenty-nine Illinois counties with only a few changes during the period of his employment. Restriction number one provided that when a representative terminated his Cardinal employment, the representative must not engage in any business activity for a period of sixty days from and after said termination within the representative's former assigned sales territory. The Court of Appeals affirmed the validity of restriction number one. Although restriction number three is not explicitly limited to a particular territory, it nonetheless specifically pertains to the clearly defined territory in which certain customers were found and serviced. Although restriction number three does not expressly speak to territory, it indicates that the former representatives will not pursue certain customers who are significantly confined to a particular area. Restriction number three is not, therefore, unreasonable considering the entirety of the contracts now before us and the facts of these instant cases.

■ We next consider the question of whether or not the potential of repeat business for certain products is a protected interest sufficient to justify the restraint of trade imposed by an enforcement of restriction number three. This Court and the Court of Appeals have both acknowledged that the business advantage which may attend a salesman's close contact with a customer is a protected interest sufficient to justify an employer's non-competition restriction. *Woodward Insurance, Inc., supra; Donahue, supra; Grand Union Tea Co., supra; Miller, supra; Welcome Wagon, Inc., supra.* In *Miller,* the Appellate Court considered a non-competition clause restricting a former employee from selling to certain customers who had previously dealt primarily with the former employee since the former employee normally was the only one in the employer's organization with whom said customers had a face-to-face relationship. The Appellate Court held that the contested clause was reasonable after finding that there was no essential difference between the employer's product and that of its competitor and that the employer's business depended upon the service provided to its customers. The Appellate Court accordingly upheld an injunction against the former employee as reasonably restrictive. In *Slisz v. Munzenreider Corp.,* (1980) Ind.App., 411 N.E.2d 700, *reh. denied,* the Court of Appeals held that a covenant not to compete

was unenforceable against the former manager of a retail furniture store in Bloomington, Indiana, who opened a competing store in Bloomington during the operative period of said clause. The *Slisz* court held:

"Under the circumstances of this case, we hold such a covenant to be unreasonable and thus unenforceable. [footnote omitted] Indeed, even assuming (as the trial court apparently did) *arguendo* that the geographical restraint of the covenant in question could be narrowed through judicial construction in disregard of the principle expressed in *Frederick v. Professional Building Maintenance Industries, Inc, supra,* it nevertheless appears such a covenant would unduly restrict the rights of a former employee where there has been no showing of confidential information, customer lists, or even the advantage of close customer contact with a "pool" of Munzenreider patrons such as that involved in the salesmen route cases and suggested by the opinion in *Donahue v. Permacel Tape Corp., supra.* Absent an appropriate factual showing-not made in the instant case-supporting the allegations of a protectible interest in the employer, such a covenant is void as against public policy."

*Slisz,* Ind.App., 411 N.E.2d at 710. We agree with Cardinal that the circumstances of Licocci and Papp are distinguishable from those in *Slisz.* Licocci and Papp both serviced designated sales territories making their situations comparable to what we have previously judged upon in the "salesman route cases." *Grand Union Tea Co., supra; Miller, supra.* We therefore hold that under the circumstances of these instant cases, repeat business for certain products was a protectible interest which rendered restriction number three reasonable.

 The remaining question pertains to whether or not adequate consideration was exchanged for the one-year limitation in restriction number three. Both Licocci and Papp claim that restriction number three was added to their employment contracts after they were employed and without any additional consideration. Licocci's argu-

ment clearly fails upon an examination of the facts. On May 9, 1978, Licocci signed an employment contract for a one-year term beginning August 1, 1978. Restrictions one and two were in that contract but restriction number three was not. Upon the expiration of his initial contract, Licocci signed a new contract on July 31, 1979, which contained all three restrictions. Obviously, Licocci's execution of the new contract did not amend the previous contract since the one-year period of the first contract was over and the second contract covered a new and subsequent period. Licocci's continued employment clearly was not the subject of the first contract and therefore constituted due and adequate consideration for all of the provisions contained in the new contract.

 On May 2, 1979, Papp signed an employment contract similar to Licocci's original contract of May 9, 1978. Papp's contract provided for a one-year term of employment commencing on August 1, 1979. On July 31, 1979, Papp and Cardinal agreed to a substitute contract which added restriction number three. Both Papp and Cardinal agreed to the substitute contract containing restriction number three before Papp began his Cardinal employment. Papp's commencement of work on August 1st, therefore, was adequate consideration for being employed by Cardinal. Cardinal's employment of Papp likewise was adequate consideration for Papp's labor and for his limited relinquishment of certain future opportunities.

Cardinal's employment practices apparently were undergoing certain formative developments when Papp entered into his employment relationship with Cardinal. This is suggested by the fact that Papp executed his substitute contract on the same day that Licocci executed his second contract which also contained the newly introduced restriction number three. Moreover, both of the contracts executed on July 31 were later amended on January 17, 1980, to create escrow accounts from which Licocci and Papp could withdraw funds on a

scheduled basis against their earned and expected commissions. Both Licocci and Papp acknowledge the January 17 amendment and consider it binding on all parties inasmuch as both now seek to enforce certain provisions pertaining to escrow accounts. We will not allow a party to claim that certain provisions of a contract are valid since supported by adequate consideration while maintaining that other provisions of the very same contract are not valid because they are not supported by adequate consideration. Since Papp implicitly admits that there was sufficient consideration to support the January 17 amendment, we find him to concede that there was sufficient consideration to support the underlying contract of July 31.

Papp and Licocci further argue that their situation corresponds to that considered by the Court of Appeals in *Advanced Copy Products, Inc. v. Cool*, (1977) 173 Ind.App. 363, 363 N.E.2d 1070, *reh. denied.* We do not agree. In *Advanced Copy Products,* Cool's employment contract was amended during the term of the original contract. Specifically, the situation was that of the modification of a contract in force. The Court of Appeals there found that any modification which imposes a new burden on an employee must be supported by additional adequate consideration. *Advanced Copy Products* cites *Puetz v. Cozmas,* (1958) 237 Ind. 500, 147 N.E.2d 227. In *Puetz,* this Court found that the involved parties had never clearly fixed the amount of rent to be charged under the contested renewal lease and therefore had demonstrated no meeting of the minds on the subject of the rent. Accordingly, we held ourselves unable to determine whether or not there had been an exchange of adequate consideration. None of these conditions decisive in *Advanced Copy Products* and *Puetz* exist with respect to Papp. The conditions of his employment contract were clearly stated and the consideration tendered by both parties was quite apparent. Papp's contract was not modified after in force and being acted under since the substitute contract was agreed to by both Papp and Cardinal at the instance of their employment relationship. We can-

not, therefore, hold that there was a failure of consideration because the parties themselves agreed to a different contract before they entered into the period and transactions subject to their contract.

Transfer is hereby granted, the opinion of the Court of Appeals is vacated and the trial court is in all things affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PRENTICE, JJ., concur.