Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 08 2013, 9:27 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ANDREW M. MCNEIL**
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**DANNY E. GLASS**
**ADAM F. GLASS**
Fine & Hatfield
Evansville, Indiana

**ROBERT M. BAKER, III**
Law Office of Robert M. Baker, III
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CLARK SALES & SERVICE, INC., | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1208-PL-387 |
| | ) | |
| JOHN D. SMITH and FERGUSON ENTERPRISES, INC., | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Timothy W. Oakes, Judge
Cause No. 49D13-1205-PL-20492

**March 8, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Clark's Sales & Services, Inc. (Clark's) brings this interlocutory appeal from the trial court's order granting in part Clark's motion for a preliminary injunction based upon the terms of a non-disclosure agreement and denying in part Clark's motion for preliminary injunction as to a restrictive covenant, each sought to be enforced against John D. Smith and his new employer, Ferguson Enterprises, Inc. The following issue is presented for review: Did the trial court erroneously conclude that Clark's did not establish a likelihood of success on the merits in support of his application for a preliminary injunction by finding and concluding that the non-competition provision in Smith's employment agreement was not supported by adequate consideration?

We reverse and remand.

Smith worked for HH Gregg Appliances and Electronics (Gregg) for four years prior to commencing employment with Clark's in 1998. Bill Wilson, a current employee of Clark's, trained Smith while they were both working at Gregg and recruited Smith to work for Clark's. While employed by Gregg, Smith became familiar with and sold high-end appliances, often training with manufacturing representatives of high-end appliances.

Clark's, a family-owned business since it was founded in 1913, is involved in builder-distributor appliance sales and service in Indiana and concentrates its efforts in high-end appliance sales. Clark's generated approximately $750,000 in sales in 1986, when Bob Clark purchased the business from his parents, and he grew the business to a peak of $28 million in sales during the first decade of the 2000s. Clark's prefers to hire sales consultants with prior experience, but does not consider its business to be similar to that of Sears, Lowes, or Gregg,

which do business in a traditional retail setting offering low-end, middle, and high-end appliances. Smith acquired knowledge, skill and information in connection with his employment as an appliance sales representative with Clark's.

In 2004, one of Clark's high-level managers left to join Gregg in a position Clark's viewed to be a competitive role. As a result, Clark's asked Smith and other, but not all, employees to sign a written employment agreement, which contained both a confidentiality clause and a restrictive covenant. Smith signed the employment agreement. Other employees signed an employee handbook, which contained a confidentiality requirement, but not a restrictive covenant.

Smith, who had previously attended Clark's management meetings, did not do so after 2007, and was made an assistant store manager in 2009 at Clark's Castleton showroom. Smith's duties involved inside sales in the showroom and did not include visiting with or calling on customers. Smith did not have assigned customers or a book of business of his own.

After twelve years working for Clark's, Smith tendered his resignation on April 13, 2012. Prior to tendering his resignation, Smith emailed copies of Clark's 2010 and 2011 monthly and quarterly sales bonus reports for all of Clark's sales personnel to his personal e-mail account from his company e-mail address, even though he was not authorized to do so. The reports contained information about all of the sales made by each of Clark's salespeople and included customer and builder contact information, the price of the materials sold, Clark's costs on those items, and Clark's profit margin on each sale. On April 18, 2012,

3

which was Smith's last day with Clark's, Smith accepted an offer of employment with Ferguson Enterprises, Inc.

Ferguson was also in the business of high-end appliance sales and service, although it was principally engaged in the plumbing and lighting business. Smith currently works for Ferguson at its builder and designer showroom in Carmel as an appliance manager. The showroom is within a 50-mile radius of where Smith's principal office with Clark's was. Smith's employment does not involve direct sales, but includes the training of sales employees, coordination with vendors, and assisting with service, installation and delivery. Smith's position is salaried and he is compensated for the overall growth of the department.

Clark Cutshaw, Ferguson's sales manager for the Indianapolis area, testified that the information contained in Clark's sales reports were of no value to Ferguson because Ferguson's corporate office dictates its cost and pricing. He further testified that Smith was expected to develop close relationships with building and remodeling contractors, but had no direct selling responsibilities. John Hoover, Ferguson's general manager for the central Indiana area, and Cutshaw's boss, testified that appliances constituted only one percent of the "spend" by Ferguson's customers and that he was trying to increase those sales. He testified that he expected Smith to close the loop with Ferguson's customers on appliance sales. In other words, Smith was expected to convince builders, remodelers, and kitchen designers who had not previously done so, to purchase appliances from Ferguson.

Although Smith claimed that he had no direct sales responsibility, he confirmed that he worked on landing sales through focusing on builder and remodeler referral sources, and

4

then allowed a salesperson to complete the actual sale. While working for Ferguson, Smith has solicited and offered to provide competitive services to business accounts and customers of Clark's.

On May 21, 2012, Clark's filed a verified complaint for preliminary and permanent injunctive relief and compensatory damages and a motion for preliminary injunction against Smith and Ferguson. Clark's subsequently filed an amended complaint that was followed shortly thereafter by the filing of a motion for entry of stipulated protective order and a motion to seal exhibits. The trial court signed the parties' stipulated protective order and granted the motion to seal the exhibits. Smith and Ferguson filed their answer, affirmative defenses, and memorandum in opposition to Clark's motion for a preliminary injunction. The next day, Smith filed a counterclaim for damages, to which Clark's filed a reply.

The trial court held a hearing on the application for the preliminary injunction on June 8, 2012. Both parties tendered their proposed findings of fact and conclusions thereon on June 12, 2012. On July 3, 2012, the trial court issued its special findings of fact and conclusions thereon granting in part and denying in part Clark's request for preliminary injunctive relief. More specifically, the trial court granted Clark's request for a preliminary injunction with respect to the nondisclosure agreement provision of Smith's employment agreement and issued an order for the return of the confidential information to Clark's. The trial court denied Clark's request for injunctive relief, however, with respect to the restrictive covenant, or noncompetition, portion of Smith's employment agreement due to a lack of

consideration. The trial court supported this conclusion by setting forth in pertinent part the following:

> In contrast, Smith gained nothing by signing the Restrictive Covenant. Smith was employed on a sales floor and did not have an exclusive right to a territory. Additionally, Smith had already received special sales training from Clark's. . . . because Clark's did not give anything of value and Smith did not gain anything by signing the non-compete agreement, this Court finds there is not adequate consideration to enforce the Restrictive Covenant between Clark's and Smith. . . . because Smith had been employed by Clark's for six years before signing the contract. There was no incentive for Smith to sign the contract, no commencement of a new job, and no pay raise. Therefore, this Court finds a lack of consideration for the Restrictive Covenant on these grounds as well.

*Appellant's Appendix* at 14-15. Clark's filed a motion to reconsider the partial denial of preliminary injunction on July 5, 2012, which was denied by the trial court.

Clark's now brings this interlocutory appeal of right from the trial court's partial refusal to grant Clark's request for a preliminary injunction with respect to the noncompetition portion of its employment agreement with Smith. In order to obtain a preliminary injunction, the moving party, here Clark's, must demonstrate by a preponderance of the evidence: (1) a reasonable likelihood of success at trial; 2) the remedies at law are inadequate; (3) the threatened injury to the movant outweighs the potential harm to the nonmoving party from the granting of an injunction; and (4) the public interest would not be disserved by granting the requested injunction. *Central Ind. Podiatry, P.C. v. Krueger*, 882 N.E.2d 723 (Ind. 2008). Our review on appeal from the grant or denial of the request for preliminary injunctive relief is for an abuse of discretion. *Id*.

6

"The power to issue a preliminary injunction should be used sparingly, and such relief should not be granted except in rare instances in which the law and facts are clearly within the moving party's favor." *Barlow v. Sipes*, 744 N.E.2d 1, 5 (Ind. Ct. App. 2001), *trans. denied.* If the moving party fails to prove any of the four requisites for obtaining preliminary injunctive relief, then the trial court's order granting such relief is an abuse of that discretion. *Apple Glen Crossing, LLC v. Trademark Retail, Inc.*, 784 N.E.2d 484 (Ind. 2003).

A trial court is required to issue special findings of fact and conclusions thereon when determining whether to grant a preliminary injunction. *Pathfinder Communic'ns Corp. v. Macy*, 795 N.E.2d 1103 (Ind. Ct. App. 2003); Ind. Trial Rule 52(A). Upon review we must make the determination whether the evidence supports the trial court's findings, and whether the findings support the judgment. *Zimmer, Inc. v. Davis*, 922 N.E.2d 68 (Ind. Ct. App. 2010). If the record lacks evidence or reasonable inferences from the evidence to support them, then the findings of fact are clearly erroneous. *Id.* The judgment is clearly erroneous when our review of the record leaves us with the firm conviction that a mistake has been made. *Id.* Our consideration is limited to a review of the evidence in the light most favorable to the trial court's judgment and we liberally construe the findings as a whole in favor of the judgment. *Id.*

Here, the trial court found that the non-competition clause in Smith's employment agreement was not supported by consideration. In particular, the trial court found as follows:

> 8. Smith did not have a written employment agreement until 2004, after working for Clark's for almost six years. At that time, after Clark's had one of its high level managers leave to join HH Gregg's in a competitive role (and which lead to litigation between Clark's and the former employee over certain

7

information the employee took from Clark's), Clark's asked Smith and other employees to sign employment agreements with Clark's that included certain restrictive covenants.

9. Smith was presented a document titled "Employment Agreement" which contained a confidentiality clause and a restrictive covenant in September 2004.

10. Smith signed the Employment Agreement (Exhibit 1) on September 29, 2004.

. . . .

12. Paragraph 7 of the Employment Agreement (hereinafter "Restrictive Covenant") provides, in pertinent part:

<u>Restrictive Covenants.</u> During the term of Employee's employment and this Agreement and for a period of two (2) years following the termination of Employee's employment, Employee agrees not to, directly or indirectly, whether individually or as a partner, shareholder, officer, director, employee, independent representative, broker, agent, consultant or in any other capacity for any other individual, partnership, firm, corporation, company or other entity, engage in the following prohibited activities:

. . . .

(C) Solicit or provide, or offer to solicit or provide, services competitive to those offered by Employer, or those provided by Employee on behalf of Employer, to any business account or customer of Employer who was a business account or customer of Employer during the term of Employee's employment, including but not limited to any business account or customer serviced or contacted by Employee, or for whom Employee had direct or indirect responsibility, on behalf of Employer within the 12-month period preceding the termination [of] Employee's employment or about whom Employee obtained Confidential Information.

(D) Work in a competitive capacity for HH Gregg's in Indianapolis, Indiana, within the State of Indiana, or in any state or municipal corporation, city, town, village, township, county or other governmental association in which HH Gregg's does business, or for an individual, partnership, firm, corporation, company or other entity providing services similar or competitive to those offered by Employer to the residential or commercial builder and remodeling

8

business sectors during the term Employee's employment with Employer, including but not limited to providing those services performed by Employee while employed by or working for Employer, within Marion County, Indiana, any county contiguous to Marion County, Indiana (including Hamilton County, Hancock County, Shelby County, Johnson County, Morgan County, Hendricks County, and Boone County), any county in Indiana in which Employer provided services or has at least one customer or client, the State of Indiana, or within a 50 mile radius of Employee's principal office with Employer.

. . . .

28. Smith currently works for Ferguson in its Carmel, Hamilton County, Indiana showroom, which is within a 50-mile radius of Smith's principal office with Clark's. Ferguson, which is a nationwide company with thousands of employees, is principally engaged in the business of plumbing and lighting. More recently, it has attempted to expand into appliances and, even more recently, kitchen cabinets.

. . . .

## Conclusions of Law

. . . .

2. Indiana courts have, on numerous occasions, addressed the enforceability of restrictive covenants such as the one involved herein. *Licocci v. Cardinal Associates, Inc.*, 445 N.E.2d 556 (Ind. 1983); *Donahue v. Permacel Tape Corp.*, 234 Ind. 398, 127 N.E.2d 235 (1955); *Captain & Co., Inc. v. Towne*, 404 N.E.2d 1159 (Ind. Ct. App. 1980). From these cases certain general principles may be distilled.

3. Covenants not to compete are in restraint of trade and are not favored by the law. *Burk v. Heritage Food Serv. Equip. Inc.*, 737 N.E.2d 803, 811 (Ind. Ct. App. 2000). Noncompetition agreements are strictly construed against the employer and are enforced only if reasonable with respect to the legitimate interests of the employer, the restrictions on the employee, and the public interest. *Bridgestone/Firestone, Inc. v. Lockhart*, 5 F. Supp. 667, 682 (S.D. Ind. 1997). The most serious hurdle[] the "likelihood of success," which involves a two-step process; first determining if the plaintiff has any chance of winning and then what those chances are balanced by the harm that will result if the court guesses wrong. *AM Gen'l Corp. v. DaimlerChrisler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002); *Harper/Love Adhesives Corp. v. Can*

9

*Witzenberg*, 2008 WL 740362 *4 (Ind. Ct. App. 2008). This Court first addresses the Restrictive Covenant and then the Nondisclosure Agreement.

4. It is fundamental that a restrictive covenant is unenforceable if it fails to obligate the parties to do anything, but the court will consider the entire contract and the presence of an acceptance clause alone will not invalidate it. *Licocci*, 445 N.E.2d at 556. *Licocci* found that a non-compete agreement was valid because the salesmen obtained exclusive territorial rights in the handling [of] the company's products in exchange for their agreement not to compete with the company. 445 N.E.2d at 559-60. In contrast, Smith gained nothing by signing the Restrictive Covenant. Smith was employed on a sales floor and did not have an exclusive right to a territory. Additionally, Smith had already received special sales training from Clark's. *Licocci* noted that an employment contract binding a sales representative to a non-compete contract, but not binding the corporation to any obligation was unenforceable for want of certainty and mutuality because it created "no obligation which either party can legally enforce against the other." 445 N.E.2d at 556. *See also Zeyher v. S.S. & S. Manufacturing Co.*, 319 F.2d 606 (7th Cir. 1963); *Schlumberger Well Services, a Div. of Schlumberger Techology Corp. v. Blaker*, 859 F.2d 512 (7th Cir. 1988) (noting the mere fact that an employee has acquired skill and efficiency in the performance of the work as a result of his employment does *not* suffice to warrant the enforcement of a covenant on his part not to compete)(quotations omitted). *Cf Wood v. Lucy, Lady Duff-Gordon*, 118 N.E. 214 (N.Y. 1917) (the court found consideration was implied when the company owner gave the employee salesman exclusive agency, and until the employee gave his efforts, the company owner could not get anything). Therefore, because Clark's did not give anything of value and Smith did not gain anything by signing the non-compete agreement, this Court finds there is not adequate consideration to enforce the Restrictive Covenant between Clark's and Smith.

5. *Licocci* further reasoned that the salesmen signed the non-compete agreements several months before starting work. 445 N.E.2d at 564. The Supreme Court noted that the subsequent commencement of work was therefore adequate consideration for being employed by the company. *Id.* The company's employment of the salesmen likewise was adequate consideration for their labor and for their limited relinquishment of certain future opportunities. *Id.* Again, this case is distinguishable from *Licocci* because Smith had been employed by Clark's for six years before signing the contract. There was no incentive for Smith to sign the contract, no commencement of a new job, and no pay raise. Therefore this Court finds a lack of consideration for the Restrictive Covenant on these grounds as well.

10

6. If a court finds that portions of a noncompetition agreement or covenant not to compete are unreasonable, it may not create a reasonable restriction under the guise of interpretation, since this would subject the parties to an agreement they have not made. *Burk*, 737 N.E. 2d at 811. However, if such a covenant is clearly divisible into parts, and some parts are reasonable while others are unreasonable, a court may enforce the reasonable portions only. *Id*. *See also Dicen v. New Sesco, Inc.*, 839 N.E.2d 684, 687 (Ind. 2005) (holding that a contract is divisible and subject to the "blue pencil" rule, where the clearly divisible and unenforceable portions of the contract may be struck and still enforce the reasonable portion of the contract).

7. "When applying the blue pencil rule, a court must not add terms that were not originally part of the agreement." *Burk*, 737 N.E.2d at 811. Rather, "unreasonable restraints are rendered reasonable by scratching out any offensive clauses to give effect to the parties' intentions." *Id*. In this case, the Restrictive Covenant cannot be blue-penciled to add consideration to the agreement. This Court is not at liberty to add terms that are not part of the original provision in order to make the contract enforceable.

. . . .

10. Given the egregious level of Smith's pre-departure act of misusing Clark's confidential information, this Court finds it troubling that Smith will continue his employment at Ferguson. However, the law unfortunately finds the Restrictive Covenant is unenforceable for lack of consideration.

11. Since the Restrictive Covenant is unenforceable, it is unnecessary for this Court to address the reasonableness of the non-compete provision, or the claim that Clark's breached the contract by lowering Smith's salary by more than 10%.

*Appellant's Appendix* at 7-17.

Clark's contends that the trial court erred by finding and concluding that the non-competition provision of the employment agreement was not supported by consideration and that the trial court reached that erroneous conclusion by taking into account only a portion of

the holding in *Licocci v. Cardinal Assocs., Inc.*, 445 N.E.2d 556 (Ind. 1983). We agree with Clark's.

*Licocci* involved the employment agreement entered into by two commissioned salesmen hired to promote the employer's products and to solicit orders. Licocci's initial employment contract was for one year and provided that for sixty days after termination of employment, Licocci would neither compete with the employer within his assigned territory or contact any of the employer's customers anywhere. Licocci signed a second employment contract that contained the same two provisions and included the additional term that Licocci would not sell or help anyone else sell the same products to the same customers he dealt with while working for the employer.

Papp signed an employment contract similar to Licocci's first contract. One day prior to commencing work for the employer, Papp agreed to a substitute employment contract adding the one-year restriction on sales, which was the additional term of Licocci's second employment contract. The employment contracts of both salesmen were amended to create escrow accounts from which they could withdraw funds against their commissions. Both men tendered thirty-day notices of termination to the employer. Licocci and Papp each requested weekly or special draws from the escrow accounts after the resignations. The employer refused, claiming, in part, that the salesmen were in violation of the non-competition provision of their contracts. The trial court granted the employer's request for a preliminary injunction enforcing both the sixty-day ban on competition and the one-year ban

12

on selling identical products to former customers. Licocci and Papp appealed the trial court's refusal to dissolve the preliminary injunction.

In discussing whether there was the exchange of adequate consideration to support the one-year ban on selling identical products to former customers, our Supreme Court held as follows:

> Both Licocci and Papp claim that restriction number three [one-year ban on sales] was added to their employment contracts after they were employed and without any additional consideration. Licocci's argument clearly fails upon an examination of the facts. On May 9, 1978, Licocci signed an employment contract for a one-year term beginning August 1, 1978. Restrictions one and two were in that contract but restriction number three was not. Upon the expiration of his initial contract, Licocci signed a new contract on July 31, 1979, which contained all three restrictions. Obviously, Licocci's execution of the new contract did not amend the previous contract since the one-year period of the first contract was over and the second contract covered a new and subsequent period. Licocci's continued employment clearly was not the subject of the first contract and therefore constituted due and adequate consideration for all of the provisions contained in the new contract.
>
> On May 2, 1979, Papp signed an employment contract similar to Licocci's original contract of May 9, 1978. Papp's contract provided for a one-year term of employment commencing on August 1, 1979. On July 31, 1979, Papp and Cardinal agreed to a substitute contract which added restriction number three. Both Papp and Cardinal agreed to the substitute contract containing restriction number three before Papp began his Cardinal employment. Papp's commencement of work on August 1st, therefore, was adequate consideration for being employed by Cardinal. Cardinal's employment of Papp likewise was adequate consideration for Papp's labor and for his limited relinquishment of certain future opportunities.
>
> . . . .
>
> Papp and Licocci further argue that their situation corresponds to that considered by the Court of Appeals in *Advanced Copy Products, Inc. v. Cool*, (1977) 173 Ind. App. 363, 363 N.E.2d 1070, *reh. denied*. We do not agree. In *Advanced Copy Products*, Cool's employment contract was amended during the term of the original contract. Specifically, the situation was that of the

13

> modification of a contract in force. The Court of Appeals there found that any modification which imposes a new burden on an employee must be supported by additional adequate consideration. *Advanced Copy Products* cites *Puetz v. Cozmas*, (1958) 237 Ind. 500, 147 N.E.2d 227. In *Puetz*, this Court found that the involved parties had never clearly fixed the amount of rent to be charged under the contested renewal lease and therefore had demonstrated no meeting of the minds on the subject of the rent. Accordingly, we held ourselves unable to determine whether or not there had been an exchange of adequate consideration. None of these conditions decisive in *Advanced Copy Products* and *Puetz* exist with respect to Papp. The conditions of his employment contract were clearly stated and the consideration tendered by both parties was quite apparent. Papp's contract was not modified after in force and being acted under since the substitute contract was agreed to by both Papp and Cardinal at the instance of their employment relationship. We cannot, therefore, hold that there was a failure of consideration because the parties themselves agreed to a different contract before they entered into the period and transactions subject to their contract.

*Licocci v. Cardinal Assocs.*, 445 N.E.2d at 564-65.

Later, in *Ackerman v. Kimball Intern., Inc.*, 652 N.E.2d 507 (Ind. 1995), our Supreme Court granted transfer from the decision of this court, *Ackerman v. Kimball Intern., Inc.*, 634 N.E.2d 778 (Ind. Ct. App. 1994). In deciding the appeal, the Supreme Court "expressly adopt[ed] and incorporate[d] by reference that portion of the Court of Appeals' opinion captioned 'Issue One: Consideration for At-Will Employment Contract.'" *Ackerman v. Kimball Intern., Inc.*, 652 N.E.2d at 509.

Ackerman began working for Kimball in 1963 and entered into an employment contract with Kimball in 1974. Kimball agreed to continue to employ Ackerman, and Ackerman agreed to remain in Kimball's employ, but that either party could terminate Ackerman's employment at any time. The employment contract contained both a non-disclosure provision and a non-competition provision. By the late 1970's, Ackerman had

advanced to Executive Vice-President of the Ply Products Division of Kimball, but by late 1992, was demoted to General Manager of Evansville Veneer, with a reduction in his annual salary. Ackerman interviewed with and received an offer of employment from one of Kimball's competitors. While considering the most attractive of the offers from the competitor, Ackerman learned that his employment with Kimball would be terminated. At that meeting, Ackerman executed a separation agreement, which contained a provision protecting trade secrets and the statement that the separation agreement did not supersede the 1974 employment agreement.

The day prior to and on the morning of his termination from employment with Kimball, Ackerman requested and received, unbeknownst to Kimball, Kimball's customer and supplier lists. When Kimball later learned of the requests, Kimball inquired of Ackerman about the location of the lists. Ackerman claimed that they were stored in an old office, but the lists were never located. Kimball then sought a temporary restraining order and preliminary injunction to prohibit Ackerman's employment with its competitor and other remedies under the terms of the employment agreement and separation agreement. The trial court granted Kimball's requests and Ackerman appealed.

The portion of our opinion that was adopted and incorporated includes the following discussion of the issue:

> According to Ackerman, the Employment Agreement, including the covenant not to compete in Paragraph 4, is unenforceable for lack of consideration because Kimball "gave nothing," was not required to provide any additional benefits to him and reserved the right to terminate his employment at will. *See* Brief of Appellant at 19.

15

We agree that the Employment Agreement favors Kimball. Only one provision of the Employment Agreement, Paragraph 1, places an obligation upon Kimball; all others [sic] provisions set forth Ackerman's obligations. Paragraph 1, while a promise by Kimball to continue Ackerman's employment, also reserves the right to terminate his employment "at any time." Record at 13.

Nevertheless, we do not inquire into the adequacy of the consideration exchanged in a contract. *Hamlin v. Steward* (1993), Ind. App., 622 N.E.2d 535, 539. Here, in exchange for his promise not to compete with Kimball or divulge Kimball's confidential business information, Ackerman received Kimball's promise to continue his at-will employment. An employer's promise to continue at-will employment is valid consideration for the employee's promise not to compete with the employer after his termination. *See Leatherman v. Management Advisors, Inc.* (1983), Ind., 448 N.E.2d 1048, 1050; *Rollins v. American State Bank* (1986), Ind. App., 487 N.E.2d 842, 843, *trans. denied*. We conclude that Ackerman and Kimball exchanged valid consideration in the Employment Agreement and that the Employment Agreement is not unenforceable for lack of consideration.

*Ackerman v. Kimball Intern., Inc.*, 634 N.E.2d at 781.

Thus, we conclude that the trial court's judgment with respect to the restrictive covenant was clearly erroneous and its decision to deny injunctive relief to Clark's was clearly erroneous. We do not inquire into the adequacy of the consideration exchanged in the employment contract. *Ackerman v. Kimball Intern., Inc.*, 634 N.E.2d 778. As in *Ackerman*, in exchange for Smith's promise not to compete or divulge confidential information, Clark's promised to continue Smith's at-will employment. The fact that Smith had been employed for a number of years prior to entering into the employment agreement has no bearing on the consideration exchanged in this case.

Because the trial court did not reach the issues of the reasonableness of the non-competition provision, or the claim that Clark's breached the contract by lowering Smith's

16

salary by more than 10%, we are left with an inadequate record from which to direct the issuance of preliminary injunctive relief. Clark's urges that we follow our decision in *Robert's Hair Designers, Inc. v. Pearson*, 780 N.E.2d 858 (Ind. Ct. App. 2002), and direct the trial court to enter the preliminary injunction without further proceedings. In *Robert's*, however, we found the trial court's conclusions supporting its decision to deny injunctive relief to be clearly erroneous and remanded the matter for further proceedings consistent with our opinion. Here, we are left with no findings on the reasonableness of the restrictive covenant and no findings with respect to whether Clark's breached the employment agreement first. We remand this matter to the trial court for a determination of the remaining issues.

Judgment reversed and remanded.

NAJAM, J., and BRADFORD, J., concur.

17