**Lisa R. BIGLEY, as a Taxpayer within the MSD of Wayne Township, and for All Other Similarly–Situated Citizens and Taxpayers, Appellant–Plaintiff,**

v.

**MSD OF WAYNE TOWNSHIP SCHOOLS, Acting by and through its School Board, Appellee–Defendant.**

No. 49A02–0310–CV–893.

Court of Appeals of Indiana.

Dec. 9, 2004.

Publication Ordered Feb. 25, 2005.

Transfer Denied March 31, 2005.

Thomas A. Pastore, Pastore & Gooden, Indianapolis, IN, Attorney for Appellant.

V. Samuel Laurin, III, Theresa M. Ringle, Bose McKinney & Evans LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Chief Judge.

Lisa R. Bigley, as a taxpayer within the Metropolitan School District of Wayne Township, and for all similarly-situated citizens and taxpayers, brings this appeal alleging that the trial court erred when it denied her motion for a preliminary injunction on the basis that Bigley failed to show a reasonable likelihood of success on the merits. She argues that she has a reasonable likelihood of success on the merits because the bidding process for the construction of a public works project was not open to competition, the Wayne Township School Board ("Board") improperly determined that the bid of R.L. Turner Corporation ("Turner") was the lowest responsive bid, and the Board improperly determined that Turner was a responsible bidder, all in violation of statute.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In 2002, the Board entered into an agreement with Schmidt and Associates

("Schmidt") to design the Lynhurst Project, a seventh and eighth grade center that included a pool for student and community use. Schmidt was also charged with preparing a set of plans and specifications, assisting Wayne Township in conducting a bid letting and the award of contracts, and assisting in overseeing the construction of the project. Geupel Demars Hagerman ("GDH") was employed as the construction manager for the project.

Schmidt employed L & W Construction Co. ("L & W") as a pool consultant for the pool portion of the Lynhurst Project ("Pool Project.") L & W's role was to prepare plans and specifications for the Pool Project, prepare a budget for the project, obtain necessary permits and approvals, assist with the determination of whether equipment or supplies other than those specified were of equal quality and status to those specified, and oversee the work of the successful bidder on the project.

L & W prepared the specifications for the Pool Project, which included descriptions of filters, gutters, and other equipment. L & W specified components manufactured by Paddock Pool Equipment Company, Inc. ("Paddock"), but provided that bidders could request approval for substitutions that were of equal quality to those specified.

After the specifications were made public, Turner requested approval to substitute a number of components specified for those made by a different manufacturer. L & W recommended the approval of all of the substitutions requested, except for a fiberglass filter. However, it noted that the same filter made of stainless steel would be acceptable. Ultimately, two bidders submitted bids for the Pool Project. J.C. Ripberger Construction ("J.C.Ripberger") submitted a bid that relied upon a subcontract bid from L & W for the pool components. Similarly, Turner submitted a bid that relied upon a subcontract bid from Spear Corporation ("Spear") to supply and install the pool system components.

On September 23, 2003, Bigley filed suit to enjoin the award of the Pool Project on the basis that it was designed, bid, and awarded in violation of statute. On that same date, the trial court granted Bigley's request for a temporary restraining order. Three days later, the trial court dissolved the temporary restraining order. On September 30, 2003, GDH recommended to the Board that the Pool Project be awarded to Turner, which it determined had submitted the lowest responsive bid from a responsible bidder.

On October 2 and October 8, 2003, the trial court conducted a hearing on Bigley's complaint. Thereafter, the trial court issued findings and conclusions denying Bigley's request for a preliminary injunction. The Board awarded the Pool Project to Turner, and Turner began construction of the pool. Bigley now appeals.

**DISCUSSION AND DECISION**

█ Bigley argues that the trial court erred in denying her petition for a preliminary injunction. The grant or denial of a preliminary injunction is within the sound discretion of the trial court, and the scope of appellate review is limited to deciding whether there has been a clear abuse of discretion. *Robert's Hair Designers, Inc. v. Pearson,* 780 N.E.2d 858, 863 (Ind.Ct. App.2002); *Daugherty v. Allen,* 729 N.E.2d 228, 232 (Ind.Ct.App.2000), *trans. dismissed; Union Twp. Sch. Corp. v. State ex rel. Joyce,* 706 N.E.2d 183, 189 (Ind.Ct. App.1998), *trans. denied* (1999); *City of Gary v. Stream Pollution Control Bd. of State of Ind.,* 422 N.E.2d 312, 315 (Ind.Ct. App.1981). When determining whether or not to grant a preliminary injunction, the trial court is required to make special find-

ings of fact and state its conclusions thereon. *Robert's Hair Designers,* 780 N.E.2d at 863; *Daugherty,* 729 N.E.2d at 232. When findings and conclusions are made, the reviewing court must determine if the trial court's findings support the judgment. *Robert's Hair Designers,* 780 N.E.2d at 863; *Daugherty,* 729 N.E.2d at 232. The trial court's judgment will be reversed only when clearly erroneous. *Robert's Hair Designers,* 780 N.E.2d at 863; *Daugherty,* 729 N.E.2d at 232. Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. *Robert's Hair Designers,* 780 N.E.2d at 863; *Daugherty,* 729 N.E.2d at 232. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Robert's Hair Designers,* 780 N.E.2d at 863. We consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment. *Id.; Daugherty,* 729 N.E.2d at 232.

■ The power to issue a preliminary injunction should be used sparingly, and such relief should not be granted except in rare instances in which the law and facts are clearly within the moving party's favor. *Robert's Hair Designers,* 780 N.E.2d at 863; *Daugherty,* 729 N.E.2d at 233; *Union Twp. Sch. Corp.,* 706 N.E.2d at 189. To obtain a preliminary injunction, the moving party has the burden of showing by a preponderance of the evidence that:

1) its remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action; 2) it has at least a reasonable likelihood of success at trial by establishing a prima facie case; 3) its threatened injury outweighs the potential harm resulting from the granting of an injunction; and 4) the public interest would not be disserved.[1] *Hughes v. City of Gary,* 741 N.E.2d 1168, 1175 (Ind.2001); *Dicen v. New Sesco, Inc.,* 806 N.E.2d 833, 841–42 (Ind.Ct.App.2004); *Robert's Hair Designers,* 780 N.E.2d at 863; *Daugherty,* 729 N.E.2d at 232–33; *Union Twp. Sch. Corp.,* 706 N.E.2d at 189.

In this case, Bigley argues that the Board has not followed the statutory procedures in receiving bids for the Pool Project. IC 36–1–12–4 specifies the procedure for obtaining bids for public works projects that exceed the specified size. The purpose behind competitive bidding statutes is to safeguard the public against fraud, favoritism, graft, extravagance, improvidence, and corruption and to insure honest competition for the best work or supplies at the lowest reasonable cost. *Schindler Elevator Corp. v. Metro. Dev. Comm'n,* 641 N.E.2d 653, 657 (Ind.Ct.App. 1994).

■ Bigley first argues that the specifications adopted by the Board precluded competition by limiting which companies could meet the requirements. IC 36–1–12–4(b)(1) requires the Board to prepare general plans and specifications describing

---

1. Bigley cites *City of Gary,* 422 N.E.2d at 315, for the proposition that she need not prove either irreparable injury nor a balance of hardship in favor of the taxpayers because the legislature has statutorily declared that the acts sought to be enjoined are unlawful or clearly against the public interest. However, were we to interpret this exception as Bigley does, this lower standard of review would apply any time a plaintiff alleged a violation of statute and the exception would eclipse the rule. Moreover, in *Union Ins. Co. v. State ex rel. Indiana Dep't of Ins.,* 401 N.E.2d 1372, 1375 (Ind.Ct.App.1980), a case relied upon by the *City of Gary* court, a statute specifically conferred a right on the State to seek an injunction in specified instances. This is not the case here. Nonetheless, we need not resolve this question, as we decide this case on the likelihood of success on the merits factor, which both parties agree Bigley must prove here.

the kind of public work required and avoid specifications that might unduly limit competition. Bigley asserts that L & W specified products that it had an exclusive franchise or right to sell in the area. She compares the Pool Project specifications to those in *Monaghan v. City of Indianapolis*, 37 Ind.App. 280, 291–92, 76 N.E. 424, 428 (1905), where a plaintiff challenged the award of a paving project to a bidder. There, the plaintiff complained that the paving product specified was a patented process. Because the patentee had absolute control over the price at which it would supply the paving, the plaintiff argued that the competitive bidding process was undermined. We agreed, and explained that if a party holds the exclusive right to use and to sell a patented process, the choice of the patented improvement amounts practically to a choice of the contractor. We concluded that so long as the patentee may sell or may refuse to sell to anyone the right to use the article, there can be no competition where the patentee owns and controls the process and other potential bidders can only procure the process from the patentee. *Id.*

Here, the trial court concluded that the essence of Bigley's complaint was that the project was not competitively bid, but that because both J.C. Ripberger and Turner submitted bids, her contention was without merit. Further, it concluded that Turner did not gain a material advantage over J.C. Ripberger in the bidding process. These conclusions were supported by its findings that L & W, the pool consultant on the Pool Project, prepared the pool specifications and drawings. The trial court also found that L & W does not manufacture its own pool equipment, but is an authorized, though not exclusive, dealer for Paddock, which is a pool equipment supplier/manufacturer that also sells its equipment directly. These findings were supported by the testimony of Gary

Richard Smith, senior project manager for GDH, and John Wisel, president of L & W. Smith testified that L & W works as a pool contractor and is a dealer for Paddock equipment. Wisel confirmed that L & W is a dealer of Paddock equipment but explained that it had no region or area that it controlled and that Paddock sells its equipment to others if they request it.

The court also found that although L & W specified certain pool equipment by manufacturer as the quality standard in the pool specifications, there was a process for interested bidders to seek approval of substitute pool equipment. The evidence showed that bidders and potential bidders utilized this process. Wisel testified that L & W approved a number of substitutions, but rejected a Neptune Benson fiberglass filter as a substitute for the filter listed in the Pool Specifications, suggesting that the stainless steel version of the filter would be acceptable. Whitten also received approval for its perimeter gutter system in lieu of the gutter system in the pool specifications. Moreover, Wisel testified that a similar process is usually established regardless of which company provides the pool specifications. He explained that when firms other than L & W serve as pool consultants, they do not specify Paddock pool equipment. In those cases, Wisel testified that he submits a request to substitute Paddock equipment for the named equipment.

The trial court found that although L & W identified various manufacturers and suppliers of pool equipment as "approved," there were ambiguities in the Pool Project specifications with respect to whether one manufacturer/supplier was required to provide the gutter system and pool deck equipment. These findings were supported by Wisel's testimony. He explained that because L & W, as the consultant, was responsible for the quality of the

project overall, it decided "to approve one manufacturer as a standard and then permit other manufacturers to submit a request for approval providing documentation on what they were going to bid on." *Transcript* at 93. He testified that L & W recommended approvals of all of the substitute equipment submitted for approval. Moreover, Wisel testified that no company submitted any requests for clarification regarding the Pool Project specifications.

The instructions to the bidders included information on how to obtain approval for substituting Paddock components for others of similar quality. Accordingly, there was no requirement that the bidders use Paddock equipment. Further, even if the bidders did elect to use Paddock equipment, they could obtain it from Paddock directly, without the intervention of L & W. Thus, unlike in *Monaghan,* the choice of the product here did not constitute a choice in the contractor. In fact, Smith testified that Turner, the winning bidder, intended to use Neptune Benson equipment, for which it had sought approval to substitute, instead of Paddock equipment.

■ Bigley further contends that permitting L & W, the pool consultant, to submit a bid for pool construction created an appearance of bias toward L & W that caused potential bidders to opt not to submit a bid. The trial court found that L & W has served as the pool consultant on eight publicly-bid projects in Indiana. In each instance, multiple bids were submitted, resulting in competition. It further found that Natare and Spear, L & W's competitors, have also served as pool consultants on other publicly bid projects and that a group of pool contractors regularly submits bids for pool construction public works projects in Indiana, including Acquicious, J.C. Ripberger, Turner, Natare, and Spear. These findings were supported by Wisel's testimony that of the eight public

works projects on which L & W has served as pool consultant, it was awarded the contract five times, but the contract went to others in the remaining cases. Wisel testified that L & W had bid on hundreds of public works projects and that Acapulco Pools, Acquicious, Turner, J.C. Ripberger, Natare, and Spear all bid on projects in this area. He further testified that Spear and Natare have served as consultants on other public works projects and that L & W bid on those projects as well. The trial court's conclusions on this issue were not clearly erroneous.

■ Bigley next argues that Turner's winning bid was unresponsive because it contained material variations from the Pool Project specifications. Competitive bidding procedures require the Board to award the contract to the lowest responsible and responsive bidder or reject all bids submitted. *Koester Contracting, Inc. v. Bd. of Comm'rs of Warrick County,* 619 N.E.2d 587, 589 (Ind.Ct.App.1993); *Irwin R. Evens & Son, Inc. v. Bd. of Indianapolis Airport Auth.,* 584 N.E.2d 576, 585 (Ind.Ct.App.1992). This requirement sets a minimum threshold for responsiveness; it does not require, or authorize, a search for the most responsive bidder. *Schindler Elevator Corp.,* 641 N.E.2d at 658. IC 36–1–12–4(b)(8) and (10) provide:

"(8) Except as provided in subsection (c), the board shall:

(A) award the contract for public work or improvements to the lowest responsible and responsive bidder; or

(B) reject all bids submitted.

(10) In determining whether a bidder is responsive, the board may consider the following factors:

(A) Whether the bidder has submitted a bid or quote that conforms in all material respects to the specifications.

(B) Whether the bidder has submitted a bid that complies specifically with the invitation to bid and the instructions to bidders.

(C) Whether the bidder has complied with all applicable statutes, ordinances, resolutions, or rules pertaining to the award of a public contract."

A bid is deemed "responsive" if it conforms in all material respects to the awarding authority's specifications. *Schindler Elevator Corp.*, 641 N.E.2d at 657; *Irwin R. Evens & Son*, 584 N.E.2d at 585. Specifications are descriptions of the physical characteristics, functional characteristics, extent, or nature of a public work project. *Irwin R. Evens & Son*, 584 N.E.2d at 585. While minor variances will not render a bid invalid, a material variance which affords one bidder a substantial advantage not available to other bidders destroys the competitive character of the bidding process and must be rejected by the awarding body as unresponsive. *Schindler Elevator Corp.*, 641 N.E.2d at 657; *Irwin R. Evens & Son*, 584 N.E.2d at 585.

■ Specifically, Bigley cites as unresponsive Turner's bid details that it intended to use a Neptune Benson filter system and an inferior grade of guttering system. The trial court found that there was a legitimate basis for the Board to award the contract to Turner. Although the Instructions to Bidders specified that any material omission or discrepancy in a bidder's bid would render the bid nonresponsive and subject to rejection, it further provided that the Board had the right to waive minor discrepancies, omissions, variances, or irregularities. The trial court found that Neptune–Benson submitted a request to Schmidt through L & W for approval to substitute its filtration equipment, perimeter gutter system, steel hair and lint strainers, pumps, and valves for those enumerated in the pool specifications. L & W and Schmidt recommended the approval of all of the components except the fiberglass filter submitted for approval and noted that a stainless steel model of the filter could be an acceptable substitution. These findings were supported by the testimony of Wisel and Smith.

■ Also, Bigley notes the specifications requirement that all of the equipment and components for the Pool Project was to be supplied and manufactured by a single manufacturer. The Pool Project specifications are outlined in Sections 13150 to 13155 of the Project Manual. The specifications provide:

"All work called for in Section 13150, Section 13152 and, Section 13154 shall be, and remain through the warranty periods, the sole responsibility of a single contractor specializing in the construction of swimming pools and the installation of swimming pool equipment."

*Appellant's Appendix* at 156. The trial court found that this requirement was intended to provide a single source of responsibility, but did not require that the prime contractor be able to complete all of the requirements by its own forces without the use of a swimming pool contractor. The trial court found that Turner's bid revealed that it would provide the concrete through its own forces and all pool equipment and accessories through its subcontractor, Spear. Similarly, J.C. Ripberger's bid proposed using L & W as a subcontractor for all pool equipment and accessories. These findings were supported by the evidence, including Wisel's testimony that L & W required one single pool contractor because "[a] swimming pool's a complicated building construction component and it[']s best to have one person responsible for the complete construction." *Transcript* at 96. However, he testified

that there was no prohibition on the single pool contractor being a subcontractor to the general contractor and no requirement that the entity that installed the pool and equipment also oversee the construction unrelated to the pool and equipment. He explained that the specifications were not drafted with the intention of having a single manufacturer of pool equipment provide each category of equipment, and it was acceptable if more than one pool manufacturer provided the pool equipment.

Finally, Bigley contends that the Board failed to determine whether Turner was a responsible bidder before awarding it the contract for the Pool Project. IC 36–1–12–4(b)(11) requires the Board to determine whether a bidder is a responsible bidder. In doing so, the Board may consider the ability and capacity of the bidder to perform the work, the integrity, character, and reputation of the bidder, and the competence and experience of the bidder. ■■■■ Where a board is vested with discretionary power to enter into public contracts pursuant to competitive bidding, such as determining the best or most responsible bidder as well as the lowest bid, an honest exercise of such discretion will not be disturbed by the courts. *Irwin R. Evens & Son,* 584 N.E.2d at 585. Smith testified that he reviewed the bids and determined whether they were responsible and responsive. He determined which bid was the apparent low bid and reviewed the bids to determine whether they were technically correct, whether the bid complied with the invitation to bid and the instructions to bidders, whether the bidder complied with all of the applicable laws and rules, and whether the bidder had any historical problems. He testified that a responsible bidder is one which can provide a sufficient bond and for which there is no known history of problems. He explained that a consideration of a bidder's ability and capacity to perform the work, its reputation, its competence, and its experience are part of the "responsible bidder" determination and that he determined that Turner met these qualifications.

We conclude that the trial court's conclusions are supported by its findings and that its findings are supported by the evidence. The trial court did not err in determining that Bigley failed to show a reasonable likelihood of success on the merits and therefore in denying Bigley's motion for a preliminary injunction.

Affirmed.

BAKER, J., and ROBB, J., concur.

## ORDER

This Court having heretofore handed down its opinion in this appeal on December 9, 2004, which affirmed the decision of the trial court.

Comes now the Appellee, by counsel, and files herein its Motion to Publish Memorandum Decision, alleging therein that publishing the decision is of substantial public importance because it provides explicit parameters to public bodies to determine whether the specification of a particular product will comply with the public bidding statute.

The Court having reviewed its opinion, having examined the Motion to Publish Memorandum Decision, and being duly advised, now finds that said Motion to Publish should be granted.

IT IS THEREFORE ORDERED as follows:

1. The Appellee's Motion to Publish Memorandum Decision is now GRANTED, and this Court's opinion heretofore handed down in this cause on December 9, 2004,

marked Memorandum Decision, Not for Publication, is now ordered published.

All Panel Judges Concur.