ZIMMER, INC., Appellant–Plaintiff,

v.

Todd O. DAVIS, Appellee–Defendant.

No. 43A05–0904–CV–195.

Court of Appeals of Indiana.

Feb. 23, 2010.

Melanie D. Margolin, Julia Blackwell Gelinas, Lucy R. Dollens, Frost Todd Brown LLC, Indianapolis, IN, Attorneys for Appellant.

Stephen R. Snyder, Randall L. Morgan, Snyder, Birch & Morgan LLP, Syracuse, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Zimmer, Inc. ("Zimmer") sought a preliminary injunction against its former em-

ployee Todd O. Davis ("Davis") to enforce the confidentiality, non-solicitation and non-competition provisions of their Employment Agreement with Davis. The trial court denied Zimmer's request for injunctive relief. Zimmer now appeals presenting the following restated issue for our review: whether the trial court erred by denying Zimmer's request for a preliminary injunction.

We affirm in part, vacate in part, and remand.

## FACTS AND PROCEDURAL HISTORY[1]

Zimmer is a Delaware corporation, with its principal place of business in Warsaw, Indiana. It designs and manufactures orthopedic products, equipment, and supplies that it markets, distributes, and sells in the United States and foreign countries. Davis began working for Zimmer in 1987, first as a customer service supervisor and later in various management positions. From approximately December 5, 2005, until his termination on January 10, 2008, Davis was Zimmer's Senior Vice President of Global Knees and Sports Medicine. Through his employment, Davis had access to confidential, proprietary information regarding Zimmer's business as a whole. Davis's responsibilities brought him into contact with many surgeons, and his relationship with those surgeons gave him commercial value.

On April 19, 2006, after Davis was promoted to Senior Vice President of Global Knees and Sports Medicine, Davis executed an Employment Agreement in ex-

change for the grant of 9,750 in stock options. Davis reaffirmed the Employment Agreement on March 4, 2007, in exchange for the grant of 9,000 in additional stock options. The Employment Agreement contained confidentiality, non-solicitation, and non-competition provisions. Unless extended pursuant to the terms of the Employment Agreement, the non-competition period of eighteen months expired on July 10, 2009. One of the terms that would extend the non-competition period was a breach of the Employment Agreement by Davis during the original non-competition period.

When Davis was terminated on January 10, 2008, he was escorted from the building and was not allowed to take any materials from Zimmer with him. He did not maintain information pertaining to Zimmer's financial information, product costs, or production costs on his personal computer. Thereafter, Davis received job offers from competing organizations. Pursuant to the terms of the Employment Agreement, Davis forwarded all of these offers to Zimmer for consideration and approval, but Zimmer rejected each without providing any specific reasons why the offers would be in violation of the Employment Agreement. Ultimately, Davis accepted a job offer from Biomet, Inc. ("Biomet") for the position of Vice President of Marketing Services, and began working for Biomet on October 29, 2008. Biomet constructed a number of firewalls within its organization to prevent a breach by Davis of the terms of Zimmer's Employment Agreement during the period of non-competition.

1.  Oral argument was held on January 27, 2010 at Purdue University's Krannert Graduate School of Management. We extend many thanks. First, we thank counsel for the quality of the oral and written arguments, for participating in post-argument discussions with the audience, and for commuting to West Lafayette. We especially thank the Executive Education Program at the Krannert Graduate School of Management for their accommodations and the students in the audience for their thoughtful post-argument questions.

On November 6, 2008, approximately eight months prior to the expiration of the non-competition period, Zimmer filed its Complaint against Davis. In the Complaint, Zimmer alleged breach of contract with respect to the Employment Agreement and sought a preliminary and permanent injunction enjoining Davis from continuing his employment with Biomet and damages for Davis's breach. Davis filed an answer to the Complaint setting forth affirmative defenses including unclean hands and waiver. Following a two-day evidentiary hearing thereon, and on March 13, 2009, the trial court entered its findings of fact, conclusions and order denying Zimmer's request for a preliminary injunction. Zimmer now appeals.

## DISCUSSION AND DECISION

### Standard of Review

To obtain a preliminary injunction, the moving party has the burden of showing by a preponderance of the evidence that: (1) the moving party's remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action; (2) the moving party has at least a reasonable likelihood of success on the merits at trial by establishing a prima facie case; (3) the threatened injury to the moving party outweighs the potential harm to the non-moving party resulting from the granting of the injunction; and (4) the public interest would not be disserved. *PrimeCare Home Health v. Angels of Mercy Home Health Care, L.L.C.*, 824 N.E.2d 376, 380 (Ind.Ct.App. 2005). The moving party must prove each of these requirements to obtain a preliminary injunction. *Id.* If the moving party fails to prove even one of these requirements, the trial court's grant of an injunction is an abuse of discretion. *Id.*

A party appealing from the trial court's denial of an injunction appeals from a negative judgment and must demonstrate that the trial court's judgment is contrary to law; that is, the evidence of record and the reasonable inferences drawn therefrom are without conflict and lead unerringly to a conclusion opposite that reached by the trial court. *Id.* We cannot reweigh the evidence or judge the credibility of any witness. *Id.* Further, while we defer substantially to the trial court's findings of fact, we evaluate questions of law *de novo. Id.*

"The grant or denial of a preliminary injunction is within the sound discretion of the trial court, and the scope of appellate review is limited to deciding whether there has been a clear abuse of discretion." *Bigley v. MSD of Wayne Twp. Sch.*, 823 N.E.2d 278, 281 (Ind.Ct. App.2004). When determining whether to grant a preliminary injunction, the trial court is required to make special findings of fact and state its conclusions thereon. *Id.* at 281–82. When findings and conclusions are made, the reviewing court must determine if the trial court's findings support the judgment. *Id.* at 282. The trial court's judgment will be reversed only when clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment. *Id.*

Zimmer claims that the trial court erred in holding that the balance of harm tipped in favor of the denial of injunctive relief, and we begin our analysis by looking to the balance of the harms requirement of

preliminary injunction inquiry; namely, whether the threatened injury to the moving party outweighs the potential harm to the non-moving party. The trial court's findings of fact and conclusions thereon relevant to this requirement are as follows:

### Findings of Fact

12. Davis did not take any documents or other media containing any of Zimmer's confidential information with him after being terminated from Zimmer.

13. Davis has an obligation under the Employment Agreement not to disclose any of Zimmer's confidential information that may be within his knowledge and such obligation continues indefinitely.

14. Davis testified that he has not disclosed any of Zimmer's confidential information in breach of the Employment Agreement.

15. Davis testified that he does not intend to breach his continuing obligation under the Employment Agreement not to disclose such confidential information.

16. There was no evidence presented during the preliminary injunction hearing that Davis had disclosed confidential information in violation of the Employment Agreement.

17. Based upon the evidence presented during the preliminary injunction hearing, there is no reason for Davis to disclose nor to believe Davis would disclose any confidential information of Zimmer in order to fulfill his new responsibilities at Biomet.

18. Davis and Biomet have undertaken to establish protections from upper management to rank-and-file employees to avoid any violation of the Employment Agreement on the part of Davis. Those protections include Davis's recusal from any review or decision-making process involving areas within his prior responsibility at Zimmer, exclusion from any meetings or portions that may potentially involve any areas within his prior responsibility at Zimmer, including Biomet's October 30, 2008 memorandum to management, to educate Biomet employees of Davis's restrictions and minimize the placement of Davis in a position to even receive requests that may potentially fall within areas subject to such restrictions.

19. There was no evidence that Zimmer has lost any sales or that there is a reasonable threat of Zimmer losing any sales as a result of Davis's employment with Biomet.

20. There was no evidence that Zimmer has lost any customers or that there is a reasonable threat of Zimmer losing customers for its products as a result of Davis's employment with Biomet.

21. There was no evidence received that Zimmer has lost any of "its" consulting surgeons or that there is a reasonable threat of Zimmer losing any of "its" consulting surgeons as a result of Davis's employment with Biomet.

22. There was no credible evidence that anyone at Biomet has received any confidential information of Zimmer from Davis.

\* \* \*

24. Davis testified that he actively began to seek employment after being terminated from Zimmer because he needed to work to earn a living. Subsequent to his termination from Zimmer, certain of Davis's personal expenses increased, including health and life insurance premiums and automobile expenses previously paid for by Zimmer.

\* \* \*

26. Davis testified that he has no knowledge of any of Zimmer's current business activities, strategies or pro-

grams other than what is made available in the public domain.

27. The potential value of any of Zimmer's confidential information retained in Davis's memory has materially diminished since Davis was terminated from Zimmer over one year ago on January 10, 2008 by factors that include the passage of time, changes in technology, new product research and development, changed business circumstances, and the implementation of a new operating plan and other strategic changes to Zimmer's business as acknowledged by [Zimmer's new CEO] during the January 29, 2009 Zimmer Earnings conference call.

\* \* \*

30. Weidenbenner further testified that he was unaware of any confidential information disclosed by Davis while employed with Biomet or any damages suffered by Zimmer as a result of Davis's employment with Biomet.

*Conclusions of Law*

9. Upon the Court's consideration of the testimony and other evidence received during the preliminary injunction hearing, the Court concludes that Davis has not contacted Zimmer's consulting surgeons in violation of the Employment Agreement.

10. Upon the Court's consideration of the testimony and evidence received during the preliminary injunction hearing, Zimmer has failed to prove that Davis communicated with any Zimmer "Customer" or "Potential Customer" in any manner *that would violate the Employment Agreement*. (emphasis added).

11. Upon the Court's consideration of the testimony and evidence received during the preliminary injunction hearing, Zimmer has failed to prove that Davis has revealed or is prepared to reveal confidential or proprietary information or misappropriated or threatened to misappropriate trade secrets of Zimmer.

\* \* \*

21. Independent of any other conclusion set forth herein supporting the denial of a preliminary injunction, and based upon the testimony and other evidence presented during the preliminary injunction hearing, the Court concludes that the potential harm to Davis resulting from the grant of a preliminary injunction as sought by Zimmer will outweigh any threatened harm to Zimmer in denying the preliminary injunction.

*Appellant's App.* at 20–23.

Zimmer notes Davis admitted that while he was employed by Zimmer he had access to and availed himself of confidential information that could be beneficial to Biomet. Zimmer claims that case law supports its position that in situations such as this, the potential harm to the employer outweighs any potential injury to the employee. Zimmer argues that Davis's "conscious decision to defy the terms of his Employment Agreement" cannot as a matter of law, outweigh the harm [to] Zimmer … as a result of Davis's breaches." *Appellant's Br.* at 42. Zimmer cites to *Gleeson v. Preferred Sourcing, LLC*, 883 N.E.2d 164 (Ind.Ct.App.2008) and *McGlothen v. Heritage Environmental Services, LLC*, 705 N.E.2d 1069 (Ind.Ct.App.1999) to support its position. Each of these cases is distinguishable.

In *Gleeson*, the employee freely entered into the non-competition agreement, voluntarily terminated her employment, sought a new job, and then attempted to hide her competitive activities from the employer. 883 N.E.2d at 178. The employee argued that injunctive relief was inequitable because she was the mother of three children, who relied upon a paycheck from her

new employer to support herself and her family, and to satisfy financial obligations. We held that the employer's loss of customer good will and the benefit of the covenant not to compete were greater than the injury to the employee from enforcing the non-competition agreement within the 150–mile geographic restriction. *Id.* at 178–79.

In *McGlothen*, an employee, who was subject to a non-competition agreement, voluntarily left his employment, retained materials from his employment constituting confidential information, actively solicited his former employer's customers after commencing work for a competitor, and attempted to convince a former co-worker to leave and join the employee at his new place of employ. The employer sought and obtained injunctive relief against the employee. The employee argued that the injury to him from the injunctive relief would be greater because of his age (54), his longevity as an employee in the industry, interference with his ability to earn a livelihood, and that the employer was not harmed because the employee had been unsuccessful in his attempts to solicit his employer's customers. 705 N.E.2d at 1075. We affirmed the trial court's decision to grant injunctive relief and noted that the evidence was unrebutted that the employer could suffer severe downsizing and layoffs if injunctive relief were not granted. *Id.*

■ First looking at the evidence of harm to Zimmer, the record establishes that Davis's employment was terminated by Zimmer, and Davis did not take any documents or other media containing Zimmer's confidential information with him after his employment was terminated. Davis testified that he has not disclosed any of Zimmer's confidential information in breach of the Employment Agreement and did not intend to breach the Employment Agreement.

Furthermore, there was no evidence that Zimmer had lost any sales, lost any customers for its products, or lost any consulting surgeons as a result of Davis's employment with Biomet. No evidence was presented that anyone at Biomet had received confidential information about Zimmer from Davis. David Weidenbenner, Zimmer's Senior Vice President of Global Marketing, was the Zimmer employee who reviewed Davis's potential new employment descriptions. Weidenbenner testified that he was unaware of any confidential information disclosed by Davis while employed with Biomet or any damages suffered by Zimmer as a result of Davis's employment with Biomet.

On the other hand, viewing the potential harm to Davis if the injunction were issued, Davis testified that he had to seek new employment after his employment with Zimmer was terminated because he needed to work to earn a living. Subsequent to his termination from Zimmer, certain of Davis's personal expenses increased, including health and life insurance premiums and automobile expenses previously paid for by Zimmer.

We cannot say based upon our review of the record that the evidence of record and the reasonable inferences drawn therefrom are without conflict and lead unerringly to a conclusion opposite that reached by the trial court. The trial court's findings are supported by the evidence and the findings, in turn, support the trial court's conclusion to deny Zimmer's request for injunctive relief based upon the balance of the harms analysis. Because Zimmer has failed to meet one of the four requirements in seeking the issuance of a preliminary injunction, the trial court did not abuse its discretion in denying Zimmer's request for preliminary injunctive relief. Finding that

this ground for denial of injunctive relief was appropriate, we do not address the other grounds cited by the trial court and challenged by Zimmer.

Since we remand for a trial on the merits, we vacate the trial court's findings and conclusions on the issues of the reasonableness of the Employment Agreement's restrictive covenants and the affirmative defense of unclean hands. Such issues are best determined by a trial on the merits of this dispute following an adequate time for discovery.

Affirmed in part, vacated in part, and remanded.

ROBB, J., and BRADFORD, J., concur.