# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**KENNETH J. FALK**
ACLU of Indiana
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELIZABETH ROGERS**
Deputy Attorney General
Indianapolis, Indiana



FILED

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| LESLEE ORNDORFF, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 53A04-1206-PL-299 |
| | ) | |
| INDIANA BUREAU OF MOTOR VEHICLES, | ) | |
| R. SCOTT WADDELL, in his official capacity as | ) | |
| Commissioner of the Indiana Bureau of | ) | |
| Motor Vehicles, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable E. Michael Hoff, Judge
Cause No. 53C01-1205-PL-1018

December 26, 2012

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Leslee Orndorff committed three driving offenses that qualified her as a habitual traffic violator ("HTV") in 2004. In 2008, the Indiana Bureau of Motor Vehicles ("BMV") issued Orndorff a driver's license. In 2012, the BMV notified Orndorff that her driving privileges were to be suspended for ten years based on her HTV status. Orndorff filed a complaint against the BMV alleging that the equitable doctrine of laches prevented the BMV from suspending her driving privileges and requesting a preliminary injunction to stop the suspension. The trial court denied her request for a preliminary injunction, concluding that Orndorff did not have a reasonable likelihood of prevailing on the merits of her laches defense at trial because it was unlikely that laches would apply to the government and the BMV's delay was understandable.

Orndorff appeals the trial court's ruling, arguing that laches applies to the government because the suspension of her driving privileges now, eight years after she qualified as an HTV and four years after she obtained a valid driver's license, will cause her to lose her job, which requires her to drive, and thrust her family into poverty, thereby threatening the public interest. She also contends that the BMV's delay is inexcusable. We conclude that under the facts of this case, there is a reasonable likelihood that Orndorff will succeed in establishing that suspending her driving privileges will threaten the public interest such that laches applies to the government. We also conclude that she has a reasonable likelihood of showing that the BMV's delay is inexcusable. Therefore, we conclude that Orndorff has a reasonable likelihood of succeeding on the merits of her laches defense. We also conclude that Orndorff

2

has carried her burden to establish the other requirements for a preliminary injunction, and thus we reverse the trial court's denial of her request for a preliminary injunction and remand for further proceedings.

**Facts and Procedural History**

The facts are undisputed. In 2002, when Orndorff was about twenty years old, she obtained her Indiana learner's permit in Terre Haute. Orndorff's driving record shows that from 2002 to 2004, she received seventeen driving convictions and had her driving privileges suspended eighteen times. The convictions consist of failing to provide proof of insurance (6), driving while suspended (5), never receiving a valid driver's license (3), "non-pointable violation" (2), and a "learner permit violation" (1). Appellant's App. at 25-30. The suspensions were based on the convictions named above as well as failure to appear in court, failure to appear for driver's safety program, and failure to pay court costs and fines following a conviction. Of particular relevance to this case, Orndorff's convictions for driving without a valid license occurred on December 12, 2002, February 25, 2003, and May 10, 2004. These three convictions qualified Orndorff as an HTV and should have resulted in the suspension of her driving privileges for ten years.

In 2008, Orndorff moved to Bloomington with her two children. On May 13, 2008, Orndorff applied for and was granted a valid Indiana driver's license by the BMV. Shortly thereafter, she obtained employment with SICIL Home Care Services as a personal care attendant to persons living at home who have needs that they are unable to address. To perform her job, Orndorff must have a valid driver's license. She uses her own vehicle to

3

drive her clients to doctor's appointments and take them shopping. Orndorff does the shopping herself for her clients who are home-bound.

In 2011, the BMV implemented new processes to identify individuals who qualified as HTVs. As a result, the BMV discovered that Orndorff qualified as an HTV based on her three convictions for driving without a valid driver's license. On April 24, 2012, the BMV sent Orndorff an HTV notice of suspension informing her that she qualified as an HTV and that her driving privileges would be suspended for ten years, effective May 29, 2012, through May 27, 2022.

Currently, Orndorff is still employed with SICIL and earns $9.75 an hour. She is the sole supporter of her two children and receives no child support. She and her children receive food stamps due to their limited income. Orndorff has a checking account into which her paychecks are deposited, but there is little money remaining after her bills are paid. She does not have a savings account. She owns a 2002 Chevrolet Impala and has no other personal property of significant value. She owns no real estate. If Orndorff's driving privileges are suspended, she will not be able to perform her duties as a personal care attendant and will likely lose her job.

Orndorff and her children live in an apartment that is partially subsidized through the Bloomington Housing Authority ("BHA"). She is required to pay a portion of the rent or face eviction. Accordingly, if she loses her job and cannot find another, she will be unable to pay her rent and her family will lose its housing. Through the BHA, Orndorff is enrolled in a Family Self Sufficiency Program, which is a five-year program designed to assist individuals

4

in establishing financial independence and home ownership. To continue participating in the program, Orndorff is required to maintain her current tenancy. Without employment, Orndorff will not be able to pay her portion of rent, will be evicted from her apartment, and will be ineligible to participate in the Family Self Sufficiency Program.

Orndorff also participates in the Circles Initiative through the South Central Community Action Program, which is a program designed to support individuals in escaping poverty. The program features weekly meetings and matches the participants with financially stable members of the community. Orndorff has been in the program since March 2010, regularly attends meetings, and is partnered with two Indiana University professors and a Christian education specialist. To continue with this program, Orndorff must be employed.

Orndorff's children have medical needs, and she drives them to doctor's appointments. Orndorff's children will begin attending a new school in the 2012-13 school year. The school is a private religious school that they attend through the Indiana Choice Scholarship Program. Because there is no public transportation to the school, Orndorff will have to drive the children. Orndorff's younger daughter, who is entering second grade, is having some difficulties with education, and Orndorff and the new school's staff believe that the new school will be beneficial for her daughter. Orndorff is enrolled at Ivy Tech and is scheduled to complete her studies in December 2012 with a degree in criminal justice. She maintains very high grades, having received a 4.0 grade-point average in the spring 2011 term.

On May 24, 2012, Orndorff filed a verified petition for judicial review and complaint for declaratory and injunctive relief, in which she alleged (1) that the BMV's extreme delay in suspending her driving privileges threatens the public interest and therefore the BMV should be prevented by the equitable doctrines of laches and estoppel from suspending her driving privileges and (2) that suspending her driving privileges after she was awarded a license by the BMV and had proven herself to be a safe driver was irrational and violated her substantive due process rights guaranteed by the Fourteenth Amendment to the United States Constitution. Orndorff asked the trial court to find that the BMV is barred from suspending her driving privileges and to enter a preliminary injunction, later to be made permanent, enjoining the BMV from suspending her driving privileges. Orndorff also filed a verified petition for a temporary restraining order and a motion for preliminary injunction. On May 25, 2012, the trial court granted a temporary restraining order enjoining the BMV from suspending Orndorff's driving privileges.

On June 4, 2012, the trial court conducted a hearing on Orndorff's request for a preliminary injunction. On June 8, 2012, the trial court issued an order containing findings of fact and conclusions thereon, which provides in relevant part as follows:

**Findings of Fact**

….

30. The Ivy [Tech] campus is 8-9 miles from [Orndorff's] home and she must drive back and forth to school. Although it would be theoretically possible for her to use Bloomington's city bus service to transport herself to school, this is virtually impossible given that she must juggle her children's schedules as well.

6

31.  If Ms. Orndorff loses her license, she will likely lose her job.  The loss of her job may cause her to lose her housing.  The loss of her driving privileges may cause the loss of her ability to continue and complete her education.  The loss of her driving privileges will likely make it impossible for her children to attend the new school her children are enrolled in for the next year.

32.  If Ms. Orndorff is unable to obtain new employment that does not require a driver[']s license, she will probably have to break up the family and have her children live with her mother who works at a gas station.

33.  This will be devastating to Ms. Orndorff and her family and will push the family back further into poverty.  This injury is irreparable and cannot be rectified through damages after the injury.

34.  This injury threatens the general public interest, as thrusting a family into poverty is contrary to the public interest.

….

**Conclusions**

….

38.  [Orndorff] has established that she will suffer irreparable harm if her license is suspended.  Despite the State's heroic efforts to characterize the effects of losing her license as mere economic injuries, it is difficult to conceive of appropriate, adequate and available monetary compensation or other legal remedy.

39.  [Orndorff] has not demonstrated a reasonable likelihood of success at trial by establishing a prima facie case, as such a case depends upon proving that laches should be attributed to the State.

….

47.  There is no clear definition of the nature of the threat to the public interest required before laches or estoppel can apply to the government.

48.  The court accepts [Orndorff's] statement that without the use of her car [her] continued employment and schooling will become almost impossible, at least as they are currently configured.  [Orndorff's] ability to care for her

children will become vastly more difficult. These changes do not serve the public interest. However, the public also has an interest in the impartial and evenhanded application of statutes.

49. It does not appear that the adverse effects on [Orndorff's] family from the suspension of her driving privileges is the sort of threat to the public interest that should prevent the State from suspending [Orndorff's] license as a habitual offender.

50. Without a showing that the public interest is threatened by the suspension of [Orndorff's] driving privileges, laches cannot be attributed to the State, despite the delay in suspending [Orndorff's] license. It is also unlikely that laches can be proven in this case, as the State's failure to act earlier is understandable. [Orndorff] did not have a license to suspend at the time she became a habitual traffic violator. The computer system did not flag her when the license was issued to her in 2008. She had no particular right to rely on the State's failure to catch her. She cannot justifiably rely to her detriment on the fact that she was not identified as a HTV in 2008. Since [Orndorff] is unlikely to establish laches, she cannot prevail on the merits of this case. For that reason, she has not proven entitlement to a preliminary injunction.

51. [Orndorff's] motion for a preliminary injunction should be denied.

This is an unusual case, because [Orndorff] has established that she will be irreparably harmed by the suspension of her driving privileges. She has also established a very long delay on the part of the State in taking action against her. Further, [Orndorff] has established that the adverse effects on her family do not advance the general public interest, as it is not in the public interest to make it harder for a productive parent to support her children and to better her family's circumstances. Indiana law does not set out what public interest should be considered by a court in deciding a claim of laches against the government. The Temporary Restraining Order entered on May 25, 2012, and extended on June 5, 2012, expires on June 8, 2012. To permit [Orndorff] to seek review of this order, the Temporary Restraining Order entered on May 25, 2012 should remain in effect until July 9, 2012 to allow [her] to seek appellate review.

Appellant's App. at 8-11. Orndorff now appeals.

8

## Discussion and Decision

We review a trial court's decision whether to grant a preliminary injunction for an abuse of discretion. *Thornton-Tomasetti Engineers v. Indianapolis-Marion County Pub. Library*, 851 N.E.2d 1269, 1277 (Ind. Ct. App. 2006). An abuse of discretion occurs when a trial court reaches a conclusion that is against the logic and natural inferences that can be drawn from the facts and circumstances before it. *Id*. "An abuse of discretion also occurs when a trial court misinterprets the law." *Id*.

When determining whether to grant a preliminary injunction, the trial court is required to make special findings of fact and state its conclusions thereon. *Bigley v. MSD of Wayne Twp. Schs.*, 823 N.E.2d 278, 281-82 (Ind. Ct. App. 2004) *trans. denied* (2005). We review the special findings and conclusions for clear error. Ind. Trial Rule 52(A).

> Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. We consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment.

*Coates v. Heat Wagons, Inc.*, 942 N.E.2d 905, 912 (Ind. Ct. App. 2011) (citation omitted).

> Orndorff appeals the denial of a request for a preliminary injunction.

> A party appealing from the trial court's denial of an injunction appeals from a negative judgment and must demonstrate that the trial court's judgment is contrary to law; that is, the evidence of record and the reasonable inferences drawn therefrom are without conflict and lead unerringly to a conclusion opposite that reached by the trial court. We cannot reweigh the evidence or judge the credibility of any witness. Further, while we defer substantially to the trial court's findings of fact, we evaluate questions of law *de novo*.

*Zimmer, Inc. v. Davis*, 922 N.E.2d 68, 71 (Ind. Ct. App. 2010) (citations omitted).

9

"Preliminary injunctions are generally used to preserve the *status quo* as it existed before a controversy, pending a full determination on the merits of the dispute." *Stoffel v. Daniels*, 908 N.E.2d 1260, 1272 (Ind. Ct. App. 2009).

> To obtain a preliminary injunction, the moving party has the burden of showing by a preponderance of the evidence that: (1) the moving party's remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action; (2) the moving party has at least a reasonable likelihood of success on the merits at trial by establishing a prima facie case; (3) the threatened injury to the moving party outweighs the potential harm to the non-moving party resulting from the granting of the injunction; and (4) the public interest would not be disserved.

*Zimmer*, 922 N.E.2d at 71 (citations omitted). Here, the trial court concluded that Orndorff carried her burden to show that her remedies at law are inadequate but that she failed to establish a reasonable likelihood of success on the merits at trial by establishing a prima facie case. The trial court did not make any conclusions regarding the third and fourth factors.

Orndorff argues that the trial court erred in concluding that she does not have a reasonable likelihood of success on the merits of her case. She contends that she has a reasonable likelihood of prevailing at trial on her claim of laches.

> Laches is an equitable defense that may be raised to stop a person from asserting a claim that he would normally be entitled to assert. The rationale behind the doctrine of laches is that a person who, for an unreasonable length of time, has neglected to assert a claim against another waives the right to assert his claim when this delay prejudices the person against whom he would assert it.

*Ind. Real Estate Comm'n v. Ackman*, 766 N.E.2d 1269, 1273 (Ind. Ct. App. 2002) (citations omitted). "Laches requires: '(1) inexcusable delay in asserting a known right; (2) an implied waiver arising from knowing acquiescence in existing conditions; and (3) a change in

10

circumstances causing prejudice to the adverse party.'" *SMDfund, Inc. v. Fort Wayne-Allen Cnty. Airport Auth.*, 831 N.E.2d 725, 729 (Ind. 2005) (quoting *Shafer v. Lambie*, 667 N.E.2d 226, 231 (Ind. Ct. App. 1996)).

The application of the doctrine of laches lies within the sound discretion of the trial court. *Ackman*, 766 N.E.2d at 1273. We will not reverse the trial court's decision unless the trial court abused its discretion, which occurs only when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*.

Here, Orndorff seeks to assert laches against a government entity, which requires that she satisfy an additional requirement. Generally, equitable defenses, such as laches, may not be asserted against the government when it acts in its sovereign capacity to protect the public welfare. *Id*. Only under "the clearest and most compelling circumstances" will laches be applicable to the government. *Id*. "Under certain conditions, where extreme unfairness is shown, a court may apply equitable principles against the government." *Id*. (citing *U.S. v. Lindberg Corp.*, 882 F.2d 1158 (7th Cir. 1989)). "Extreme unfairness occurs where the public interest would be threatened by the government's conduct." *Id*. (citing *Hannon v. Metro. Dev. Comm'n of Marion Cnty.*, 685 N.E.2d 1075 (Ind. Ct. App. 1997) (holding that an exception to the rule that equitable estoppel cannot be applied against governmental entities exists if the public interest would be threatened by the government's conduct)).

The BMV seeks to suspend Orndorff's driving privileges due to her HTV status pursuant to Indiana Code Section 9-30-10-4(b), which provides in relevant part, "A person who has accumulated at least three (3) judgments within a ten (10) year period for any of the following violations, singularly or in combination, and not arising out of the same incident, is a habitual violator." The qualifying judgments include: (1) operation of a vehicle while intoxicated; (2) operation of a vehicle with an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol per one hundred (100) milliliters of the blood or two hundred ten (210) liters of the breath; (3) operating a motor vehicle while the person's license to do so has been suspended or revoked; (4) *operating a motor vehicle without ever having obtained a license to do so*; (5) reckless driving; (6) criminal recklessness involving the operation of a motor vehicle; (7) drag racing or engaging in a speed contest in violation of law; and (8) any felony under an Indiana motor vehicle statute or any felony in the commission of which a motor vehicle is used. *Id*. Indiana Code Section 9-30-10-5(a) governs notice of suspension and provides,

> If it appears from the records maintained in the bureau that a person's driving record makes the person a habitual violator under section 4 of this chapter, the bureau shall mail a notice to the person's last known address that informs the person that the person's driving privileges[1] will be suspended in thirty (30) days because the person is a habitual violator according to the records of the bureau.

---

[1] Effective July 1, 2012, "Driving privileges" are defined as "the authority granted to an individual that allows the individual to operate a vehicle of the type and in the manner for which the authority was granted." Ind. Code § 9-13-2-48.3 (Pub. Law 125-2012, Sec. 12).

Orndorff's driving privileges are to be suspended for ten years. *See* Ind. Code § 9-30-10-5(b). "The primary purpose of suspending a person's license for being an HTV is to remove from the highway those drivers who have proven themselves to be unfit to drive, and who pose a substantial threat to the safety of others." *Ind. Bureau of Motor Vehicles v. McNeil*, 931 N.E.2d 897, 902 (Ind. Ct. App. 2010) (citation omitted), *trans. denied* (2011). The parties do not dispute that suspending the driving privileges of a person who qualifies as an HTV is an action to protect the public welfare. Thus, for laches to be applicable in this case, Orndorff must show that suspending her driving privileges presents a threat to the public interest.

The trial court found that Orndorff will suffer adverse effects if her driving privileges are suspended, and that those adverse effects, namely that she will lose her job and her family will be thrust into poverty, threaten the public interest. Appellant's App. at 8. The trial court concluded that Indiana law offers no clear definition of the nature of the threat to the public interest that is required to apply laches to the government. Nevertheless, the trial court concluded that the adverse effects that will be suffered by Orndorff's family do not appear to constitute the sort of public threat that should prevent the BMV from suspending her driving privileges. *Id.* at 11.

Our research reveals that the trial court correctly observed that for purposes of applying equitable defenses to the government, "[w]hat constitutes the public interest [] is not well defined." *Hi-Way Dispatch, Inc. v. Ind. Dep't of State Revenue*, 756 N.E.2d 587, 599 (Ind. T.C. 2001) (citing *Samplawski v. City of Portage*, 512 N.E.2d 456, 459 (Ind. Ct. App.

13

1987)). Although this Court has been confronted with the question whether laches should apply to the BMV's suspension of driving privileges due to HTV status, in neither case was it necessary for the Court to define what constitutes a threat to public interest. In *McNeil*, the appellant was convicted twice of operating while intoxicated and once of reckless driving. Two years after his third qualifying conviction, the BMV sent McNeil an HTV notice informing him of his ten-year suspension. In rejecting McNeil's argument that the BMV was barred by laches from suspending his driving privileges, the *McNeil* court summarily concluded that "McNeil has not shown how the public interest would be threatened by the BMV's conduct, and therefore, the doctrine of laches is not applicable in the present case." *McNeil*, 931 N.E.2d at 902 n.2.

More recently, in *Thomas v. Indiana Bureau of Motor Vehicles*, No. 64A03-1204-PL-191 (Ind. Ct. App. Nov. 28, 2012), another panel of this Court rejected the appellant's argument that laches should bar the BMV from suspending his driving privileges based on his HTV status. Thomas was convicted of operating a vehicle while intoxicated, reckless driving, and operating while intoxicated endangering a person. Three and a half years after his third qualifying offense, the BMV sent him notice of his HTV status and suspension of his driving privileges. Thomas argued that it was unfair to suspend his driving privileges because in the years since his last qualifying conviction, he had altered his behavior to effectively render himself a safe driver. The *Thomas* court was "unconvinced by Thomas's self-serving statement regarding his belief that he has altered his behavior in a manner such to render him a 'safe driver'" and concluded that "it falls far short of demonstrating that the

14

public interest would be threatened by the BMV's conduct." *Id.*, slip op. at 8-9. The

*Thomas* court concluded that the public interest would be served, not threatened, by the ten-

year suspension, and that laches was therefore inapplicable to the government in that case.[2]

Unlike the appellants in *McNeil* and *Thomas*, Orndorff argues, and the trial court

agreed, that thrusting her family into poverty is a threat to the public interest, and therefore

we must consider the definition of public interest in greater depth to determine whether

laches should apply to the government in this case. We find *Samplawski* helpful. There, the

court refined the definition of the threat to public interest in considering whether equitable

estoppel could be applied to the government.

In *Samplawski*, the City of Portage commenced eminent domain proceedings to secure

a strip of land from the Samplawskis. The mayor of Portage informed the Samplawskis that

they did not have to comply with the filing deadlines to object to the appraisers' valuation of

their property. The city sought to enforce the appraisers' valuation, and the Samplawskis

sought a declaration that the city be estopped from asserting that the Samplawskis failed to

file objections to the appraisers' valuation. In determining whether laches applied, the

*Samplawski* court reasoned as follows:

> A significant factor in determining whether the exception may be applied is
> whether public funds are involved. Estoppel may be permitted when its
> application will not involve the unauthorized or unlawful use of public funds.
> [*City of Crown Point v. Lake Cnty.*, 510 N.E.2d 684 (Ind. 1987); *Cablevision
> of Chicago v. Colby Cable Corp.*, 417 N.E.2d 348 (Ind. Ct. App. 1981)].

---

[2] In *Thomas*, the appellant also argued that a statute of limitations period should apply to the BMV regarding suspension of driving privileges due to HTV status. The *Thomas* court concluded that the general ten-year limitation period in Indiana Code Section 34-11-1-2 applies to suspension of driving privileges based on HTV status. *Thomas*, slip op. at 6-7. This is not at issue here as neither party in this case has raised a statute of limitations argument.

It has also been said that estoppel may be permitted where the limitations on governmental authority are not clear and unambiguous, or where the government attempts to take inconsistent positions at different stages of the same proceeding. [*State v. Hendricks Superior Court*, 250 Ind. 675, 235 N.E.2d 458 (1968); *Cablevision*, 417 N.E.2d 348.]

Most stressed, however, is the idea that estoppel may be allowed if the failure to allow it would result in thwarting public policy or defeating the public interest. [*Crown Point*, 510 N.E.2d 684; *Cablevision*, 417 N.E.2d 348.] Unfortunately, the decisions have done little to define when it is that public policy favors rather than opposes the application of estoppel. For instance, it would appear to favor the public interest that citizens be able to rely upon the representations made by their public officials, yet that interest is clearly outweighed in the statement of the general rule. Perhaps it is sufficient for present purposes to state that for an exception to the general rule to apply, *there must be an articulable public policy reason which the court determines outweighs the public policy that supports denying estoppel*.

*Samplawski*, 512 N.E.2d at 459 (emphasis added). The *Samplawski* court concluded that the Samplawskis failed to present an articulable public policy reason to apply equitable estoppel to the City of Portage. *Id.*

Here, Orndorff argues that due to the BMV's long delay in acting to suspend her driving privileges, the adverse effects of suspending her driving privileges now will threaten the public interest. The BMV does not challenge any of the trial court's factual findings but contends that the adverse effects on Orndorff's family resulting from suspension of her driving privileges are personal and not a public interest.[3] Although the adverse effects are undeniably personal, under the facts of this case, public policy interests are materially

---

[3] Despite failing to specifically challenge any of the trial court's findings as unsupported by the evidence, the State asserts that the adverse effects are speculative and based on Orndorff's self-serving testimony. We will not address these assertions except to observe that they are merely invitations to reweigh the evidence, which we will not do. *Zimmer*, 922 N.E.2d at 71.

16

impacted. Here, government agencies have been providing financial and structural support to Orndorff and her family. The BHA provides her with partially subsidized housing. Orndorff participates in its Family Self Sufficiency Program. In addition, the South Central Community Action Program supports her through its Circles Initiative. These government entities and the assistance that they have been providing to Orndorff evidence a real and tangible public interest in reducing poverty. Significant government resources have been expended to enable Orndorff to become self-sufficient and free of the need to depend upon government aid. The BMV argues that Orndorff is already receiving government assistance. While that is true, it ignores the fact that if she is unable to maintain employment because her driving privileges are suspended, she and her family will become more, rather than less, dependent on government aid. Given that Orndorff's eligibility for housing and government programs is dependent upon her gainful employment, which is in turn dependent upon her driving privileges, there is a substantial probability that the public interest in reducing poverty will be thwarted if the BMV is not barred from suspending Orndorff's driving privileges on the basis of laches.

The BMV asserts that Orndorff would have faced the same prejudices she complains of now if it had suspended her driving privileges in 2004. We disagree. The BMV not only failed to notify Orndorff of her HTV status for eight years after she qualified as an HTV, but it also issued her a valid driver's license that she has now held for four years. After obtaining her driver's license, Orndorff accepted employment that requires that she be able to transport her clients or run errands on their behalf. The BMV's assertion ignores the fact that it issued

Orndorff a driver's license and that her employment depends on her valid driving privileges. If her driving privileges had been suspended in 2004, she would have sought different employment. In addition, she would now be eligible to apply for a probationary license that would allow her to drive for employment and other special circumstances. *See* Ind. Code § 9-30-10-9(c), -(d) (providing that where a court finds that an HTV has had his or her driving privileges suspended for at least five consecutive years and certain other conditions are met, the court may place the person on probation and shall order the BMV to issue the person probationary driving privileges with restrictions). Orndorff's job is the foundation supporting nearly everything that she, with the assistance of government agencies, is doing to lift her family out of poverty. If Orndorff's driving privileges are suspended now, it will derail her efforts, and those of the government agencies that have been assisting her, to maintain steady employment, support her family, and secure stable housing. Instead of climbing out of poverty, she will be thrust back into poverty, and such an event threatens the public interest.

Under the facts of this case, laches will be applicable to the government if the public interest in reducing poverty outweighs the public interest in denying laches. *Samplawski*, 512 N.E.2d at 459. As previously stated, the purpose of suspending the driving privileges of an HTV is to protect the public from unsafe drivers. *McNeil*, 931 N.E.2d at 902. Here, all three of Orndorff's qualifying convictions are for driving without a valid driver's license. A person who has not received a valid driver's license is an unsafe driver because that person has not proven to the satisfaction of the BMV that he or she has mastered the rules of the

18

road and knows how to safely operate a vehicle. That danger has been remedied in this case. Orndorff passed the required driving tests and was awarded a driver's license. She has demonstrated that she knows the rules of the road and how to drive. In addition, since she received a valid driver's license, Orndorff has not incurred any driving convictions.

Based on these circumstances, Orndorff has presented a prima facie case that she is not a substantial threat to the safety of others. As such, the public interest in keeping unsafe drivers off the road will not be served by suspending Orndorff's driving privileges. Therefore, based on the particular facts of this case, we conclude that Orndorff has established a prima facie case of an articulable public policy interest that outweighs the public policy that supports denying laches and thus that there is a reasonable likelihood that she will prevail at trial in her argument that laches is applicable to the BMV.

That is not the end of our inquiry however. The trial court also concluded that Orndorff did not have a reasonable likelihood of establishing laches because the BMV's delay was understandable. *See SMDfund*, 831 N.E.2d at 729 (laches requires "inexcusable delay in asserting a known right"). Specifically, the trial court concluded that Orndorff did not have a license to suspend at the time she became an HTV, that the BMV's computer system did not flag her when she was issued a license in 2008, and that she had no right to rely on the BMV's failure to withhold driving privileges. Appellant's App. at 11.

The trial court's conclusions imply that the BMV had no obligation to recognize Orndorff's status as an HTV until after she was actually issued a valid driver's license. Such a conclusion is contrary to Indiana Code Section 9-30-10-4(b), which states that when a

19

person has accumulated three qualifying convictions within ten years, that person "is a habitual violator." Therefore, one's status as an HTV is not dependent upon the person's possession of a valid driver's license. Pursuant to Indiana Code Section 9-30-10-4(b), Orndorff's status as an HTV was activated on May 10, 2004, when she was convicted of driving without a valid driver's license for the third time within ten years.[4]

Further, although Orndorff did not have a driver's license at that time, that fact did not relieve the BMV of its duty to identify her as an HTV. The BMV is not only authorized to maintain driving records for persons who do not have a valid driver's license, but it is also required to establish a driving record for an unlicensed driver when that driver incurs a driving conviction. *See* Ind. Code § 9-24-18-9(a) ("The bureau may establish a driving record for an Indiana resident who does not hold any type of valid driving license. The driving record shall be established for an unlicensed driver when an abstract of court conviction has been received by the bureau."). The BMV has not presented any explanation as to why it took eight years to identify Orndorff as an HTV or why it issued her a driver's license for which she should have been ineligible. Therefore, the trial court clearly erred in concluding that Orndorff is unlikely to succeed in showing that the BMV's delay was inexcusable. Based on our determinations that Orndorff has established a prima facie case that laches is applicable to the government under these circumstances and that the BMV's

---

[4] For purposes of determining the number of judgments accumulated within a ten-year period, the dates of the offenses are used. Ind. Code § 9-30-10-4(e).

delay was inexcusable, we also conclude that the trial court clearly erred in concluding that Orndorff did not have a reasonable likelihood of success on the merits at trial.[5]

We now turn to the remaining requirements necessary to obtain a preliminary injunction: that the moving party's remedies at law are inadequate; that the threatened injury to the moving party outweighs the potential harm to the non-moving party resulting from the granting of the injunction; and that the public interest would not be disserved. *Zimmer*, 922 N.E.2d at 71. The trial court concluded that Orndorff's remedies at law are inadequate. The BMV disagrees, arguing that the injuries to Orndorff are purely economic. *See Ind. Family & Soc. Services Admin. v. Walgreen Co.*, 769 N.E.2d 158, 162 (Ind. 2002) ("A party suffering mere economic injury is not entitled to injunctive relief because damages are sufficient to make the party whole."). The BMV's argument fails to explain how, if Orndorff prevails at trial, monetary damages will compensate her if her family loses its housing or if the children are unable to attend their new school due to lack of transportation. We agree with the trial court that "it is difficult to conceive of appropriate, adequate and available monetary compensation or other legal remedy." Appellant's App. at 9.

As to the last two requirements for a preliminary injunction, the facts of this case permit us to address them together because the non-moving party is the BMV and any harm it incurs would constitute a harm to the public interest. Based on the particular circumstances

---

[5] The BMV cites *Bryant v. State ex. rel. Van Natta*, 405 N.E.2d 583, 584 (Ind. Ct. App. 1980), in which another panel of this Court concluded that the BMV did not waive its right to suspend Bryant's driving privileges despite issuing him a permit when he qualified as an HTV. We observe that the *Bryant* court summarily reached this conclusion, providing no rationale or citation for it. As such, we respectfully decline to follow *Bryant*.

of this case, we have concluded that suspending Orndorff's driving privileges presents a threat to the public interest and that no public interest will be served by suspending her driving privileges. It follows that the threatened injury to Orndorff outweighs the potential harm to the BMV resulting from the granting of the injunction and that the public interest would not be disserved. In sum, then, we conclude that Orndorff has carried her burden to establish each requirement for a preliminary injunction. Therefore, we reverse the trial court's denial of her request for a preliminary injunction and remand for further proceedings.

Reversed and remanded.

RILEY, J., and BAILEY, J., concur.