## FOR PUBLICATION

FILED

Jul 18 2013, 6:26 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**RICHARD W. LORENZ**
Hickam & Lorenz, P.C.
Spencer, Indiana

ATTORNEYS FOR APPELLEE:

**JONATHAN PETERSEN**
**NATASHA BURKETT**
Law Office of Jonathan Petersen
Hammond, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| AUDITOR OF OWEN COUNTY and TREASURER OF OWEN COUNTY, | ) ) ) | |
| Appellants-Respondents, | ) ) | |
| vs. | ) ) | No. 60A01-1212-MI-592 |
| ASSET RECOVERY, INC., | ) ) ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE OWEN CIRCUIT COURT
The Honorable Frank M. Nardi, Judge
Cause No. 60C01-1109-MI-453

**July 18, 2013**

**OPINION - FOR PUBLICATION**

**BARTEAU, Senior Judge**

STATEMENT OF THE CASE

The auditor and the treasurer of Owen County ("Owen County") appeal the trial court's order granting Asset Recovery, Inc.'s "Verified Petition and Claim for Surplus After Tax Sale."

We reverse and remand.

ISSUE

Owen County presents one issue for our review, which we restate as: whether the trial court erred by granting Asset Recovery's petition to claim the surplus funds from the tax sale of certain property in Owen County.

FACTS AND PROCEDURAL HISTORY

In 2010, real estate located in Owen County and belonging to Ora and Leafie Chambers (collectively "the Chamberses") was sold at a tax sale. Because the purchaser paid more for the property than the amount required to fulfill the outstanding tax obligations, the excess money was deposited in the county's tax sale surplus fund in accordance with Indiana Code section 6-1.1-24-7(a)(3) (2010). The Chamberses were then entitled, pursuant to Indiana Code section 6-1.1-24-7(c)(1), to file a claim for the money deposited in the fund. On March 16, 2012, the Chamberses signed a document entitled "Bill of Sale and Assignment," which purported to transfer to Asset Recovery their right to the surplus funds from the tax sale of their property in the amount of $7,465.50.

In April 2012, Asset Recovery filed with the trial court a motion to intervene and a petition for release of the surplus funds. Owen County filed an objection to Asset Recovery's motion and petition. The trial court held a hearing and granted the motion to intervene but took under advisement Asset Recovery's petition for release of the funds. The trial court later granted the petition for release of the surplus funds. It is from this order that Owen County now appeals.

DISCUSSION AND DECISION

Owen County contends that the trial court erred in granting Asset Recovery's petition for release of the funds. Specifically, Owen County argues that Indiana Code section 6-1.1-24-7.5 (2010) invalidates the Bill of Sale and Assignment issued by the Chamberses to Asset Recovery such that Asset Recovery is not entitled to the Chamberses' tax sale surplus funds.

We review the trial court's grant of Asset Recovery's petition for an abuse of discretion. An abuse of discretion occurs when a trial court reaches a conclusion that is against the logic and natural inferences that can be drawn from the facts and circumstances before it. *Orndorff v. Ind. Bureau of Motor Vehicles*, 982 N.E.2d 312, 319 (Ind. Ct. App. 2012), *trans. denied*. An abuse of discretion also occurs when a trial court misinterprets the law. *Id.* In addition, the trial court abuses its discretion when it fails to comply with a statute, and our scope of review in that question is not limited in any way. *Matter of S.L.*, 599 N.E.2d 227, 230 (Ind. Ct. App. 1992).

Indiana Code section 6-1.1-24-7.5 provides:

(a) For purposes of this section, "property owner" refers to the owner of record of real property at the time the tax deed is issued and who is divested of ownership by the issuance of the tax deed.

(b) If a property owner enters into an agreement on or after May 1, 2010, that has the primary purpose of paying compensation to locate, deliver, recover, or assist in the recovery of money deposited in the tax sale surplus fund under section 7(a)(3) of this chapter with respect to real property as a result of a tax sale, the agreement is valid only if the agreement:

> (1) requires payment of compensation of not more than ten percent (10%) of the amount collected from the tax sale surplus fund with respect to the real property, unless the amount collected is fifty dollars ($50) or less;
>
> (2) is in writing;
>
> (3) is signed by the property owner; and
>
> (4) clearly sets forth:
>
>> (A) the amount deposited in the tax sale surplus fund under section 7(a)(3) of this chapter with respect to the real property; and
>>
>> (B) the value of the property owner's share of the amount collected from the tax sale surplus fund with respect to the real property after the compensation is deducted.

Here, the Chamberses are the property owners as defined in Indiana Code section 6-1.1-24-7.5(a). They were the owners of record of the property when it was sold and a tax deed was issued. As a result of that transaction, they were divested of their ownership of the property. The parties do not dispute this.

4

On March 16, 2012, the Chamberses entered into an agreement with Asset Recovery, a Colorado corporation, whereby they purportedly sold to Asset Recovery their rights to the surplus funds from the tax sale of their Indiana property. The agreement is entitled "Bill of Sale and Assignment," and its terms state that for the sum of $4,479.30, $150 of which was paid in advance, the Chamberses assigned to Asset Recovery their personal property, specifically the "Excess Proceeds claim in the amount of $7,465.50 originating from the 9/1/2010 sale of tax defaulted property in Owen County under Map #60-16-20-100-010.000-017." Appellants' App. p. 8.

This agreement between the Chamberses and Asset Recovery is invalid pursuant to Indiana Code section 6-1.1-24-7.5(b) because it is an agreement that has the primary purpose of paying compensation to recover money deposited in a tax sale surplus fund with respect to property that has been the subject of a tax sale and requires payment of compensation of more than 10% of the amount to be collected from the tax sale surplus fund. We are unmoved by Asset Recovery's disingenuous argument that the agreement is a bill of sale and assignment and nothing more. While the agreement, in form and label, is an assignment of rights to certain personal property (i.e., tax sale funds), it is in substance an asset recovery agreement. Substantively the agreement states that Asset Recovery will recover the Chamberses' funds in the amount of $7,465.50 from Owen County's tax sale surplus fund and give $4,479.30 to the Chamberses. This leaves $2,986.20 for Asset Recovery. The agreement contains no stated purpose, and we discern no other purpose for the agreement than to pay compensation to Asset Recovery

5

for its recovery of the Chamberses' money from the tax sale surplus fund. Therefore, we refuse to accept Asset Recovery's invitation to regard the agreement between it and the Chamberses as a bill of sale, thereby elevating its form over its true substance. *See Citizens Action Coal. of Ind., Inc. v. N. Ind. Pub. Serv. Co.*, 804 N.E.2d 289, 301 (Ind. Ct. App. 2004) (stating that this Court has indicated its preference to place substance over form). Moreover, justice should not be defeated by technicalities. *Binninger v. Hendricks Cnty. Bd. of Zoning Comm'rs*, 668 N.E.2d 269, 272 (Ind. Ct. App. 1996) (discussing Court's policy not to exalt form over substance), *trans. denied*.

Having determined that the primary purpose of the agreement between Asset Recovery and the Chamberses is to pay compensation to Asset Recovery to recover money deposited in the tax sale surplus fund, we now turn to whether the agreement requires payment of more than 10% of the amount collected. Pursuant to its agreement with the Chamberses, Asset Recovery would receive $2,986.20. This amount is equal to 40% of the total amount collected from the surplus fund. In stark contrast, pursuant to Indiana Code section 6-1.1-24-7.5(b)(1), Asset Recovery is limited to 10% of the total amount collected from the surplus fund, which is equal to $746.55. Thus, Asset Recovery would receive $2,239.65 more as a result of circumventing the statute. The agreement is merely a ruse utilized by Asset Recovery to circumvent the 10% fee cap statutorily mandated by Indiana Code section 6-1.1-24-7.5(b)(1). *See, e.g.*, *Greenpoint Bank v. Criscione*, 23 Misc.3d 1106, 885 N.Y.S.2d 711 (2009) (holding that New York Abandoned Property Law § 1416 invalidated property recovery agreement because

6

agreement provided for payment of fees in excess of 15% of value of recoverable property).

Moreover, as a matter of public policy, the statute is designed to protect the citizens of our state and to regulate the activities of property locator services whose primary purpose is to locate money deposited in tax sale surplus funds by capping the fees at 10% of the total amount collected from the surplus fund. Certainly, elderly property owners are a particular group of the population to be protected by this statute as their vulnerability is often preyed upon. Therefore, it would be error for us to ignore the spirit and objectives of Indiana Code section 6-1.1-24-7.5 by allowing Asset Recovery to be compensated for the recovery of the funds pursuant to the terms of its agreement with the Chamberses.

CONCLUSION

For the reasons stated, we conclude that the trial court abused its discretion by granting Asset Recovery's petition for the release of the surplus funds.

Reversed and remanded for further action not inconsistent with this opinion.

BRADFORD, J., and BROWN, J., concur.